UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| AXIS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No.: 1:19-cv-00165-DRL-SLC |
| | ) | |
| AMERICAN SPECIALTY INSURANCE | ) | |
| & RISK SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF AXIS INSURANCE COMPANY'S
<u>BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY</u>**

Plaintiff AXIS Insurance Company ("AXIS") contracted with defendant American Specialty Insurance & Risk Services ("American Specialty") to promote, underwrite, bind, and deliver AXIS's insurance policies to customers. One of those customers—the Tampa Bay Buccaneers ("Buccaneers")—purchased a general liability policy ("GL Policy") and an excess liability policy ("Excess Policy") in 2013 through its broker, Marsh USA ("Marsh"). But when American Specialty underwrote, bound, and delivered those policies to the Buccaneers, it did so incorrectly, and contrary to its contractual obligations to AXIS. Among other things, American Specialty offered excess coverage that it did not have authority to bind, and then it delivered an excess policy that failed to provide the coverage it offered.

American Specialty's errors became AXIS's problem in 2015, when the Buccaneers' former placekicker, Lawrence Tynes ("Tynes"), asserted a claim against the Buccaneers ("Tynes Claim") that was likely to exhaust the team's primary policy and potentially would have required AXIS to pay the full limits of the Excess Policy. AXIS's present action against American

Specialty is to recover the damages it incurred after the Buccaneers sought to invoke the phantom coverage it thought it had purchased but American Specialty had failed to deliver.

AXIS has requested straightforward discovery from American Specialty and its parent, Brown & Brown, Inc. ("Brown & Brown"), that is central to AXIS's claims—namely, the documents and communications that American Specialty and Brown & Brown exchanged internally and with third parties that relate to the GL Policy, the Excess Policy, Tynes, and the Tynes Claim, including the underwriting file that American Specialty maintained for the GL and Excess Policies ("Underwriting File"), and the claim files related to the Tynes Claim under those policies ("GL Claim File" and "Excess Claim File").  American Specialty's witnesses and other documents it has produced confirm these requested documents exist, and American Specialty and Brown & Brown agreed to produce them (or failed to specifically object to doing so).  But, at each turn, and despite numerous meet-and-confer efforts, American Specialty and Brown & Brown have obfuscated, misdirected, and ultimately refused this discovery.  Because American Specialty's document production to date does not satisfy Rule 34, AXIS cannot use those documents to, among other things, discern all that it is missing.

AXIS, therefore, moves for an order compelling both entities to respond fully to all of AXIS's discovery and to pay AXIS's fees in pursuing this motion.

**I.     Relevant Facts and Procedural History**

  **A.  American Specialty's Deficient Written Discovery Responses**

American Specialty served its written responses to AXIS's First Set of Requests for Production ("RFPs") on November 15, 2019.  *See* Decl. of Stephanie Gutwein ("Gutwein Decl."), Ex. 1 (RFPs), Ex. 2 ("RFP Resps.").

On March 6, 2020, AXIS sent a Rule 26(f) letter to American Specialty ("March Letter") asking American Specialty to clarify certain of its RFP Responses, which, among other things, appeared to indicate that American Specialty was objecting to producing internal American Specialty documents and communications.  *See id.*, Ex. 3.

**B.  American Specialty's Deficient Document Production**

   **1.  American Specialty's serves its first production of documents.**

American Specialty served its first production of documents ("First Production"), totaling 1,181 documents, on March 16, 2020.  *See id.*, ¶ 5.  Also on March 16, 2020, American Specialty refused AXIS's request to identify (i) the custodians it had collected from, (ii) the types of files it had collected; or (iii) the volume of its collection.  *See id.*, Ex. 4 at 1 & 4.

   **2.  AXIS sends a second Rule 26(f) letter.**

On May 15, 2020, AXIS sent American Specialty a second Rule 26(f) letter ("May Letter").  *See id.*, Ex. 5.  In addition to reiterating its concerns with American Specialty's RFP Responses, AXIS identified, and requested that American Specialty explain or correct, a number of deficiencies with its First Production, including:

- Missing metadata fields ("Missing Metadata"), incorrect metadata that was erroneously linking unrelated documents ("Incorrect Family Metadata"), and what appeared to be modified documents in its production ("ESI with Modified Email Subjects") (collectively, "Production Data Issues"); and

- Documents missing from the First Production (collectively, "Missing Documents"), including (a) relevant internal American Specialty documents, such as the Underwriting and Claim Files, and (b) communications American Specialty exchanged internally ("Missing American Specialty Communications") or with third parties ("Missing Third-Party Communications").  *See id.*, Ex. 5, § II.B.[1]

---

[1]    In its May Letter and during later meet-and-confers, AXIS also asked American Specialty to supplement its production with missing, responsive documents related to underwriting for other NFL teams.  *See, e.g., id.*, Ex. 5, § II.B.4.  American Specialty has also refused to remedy that deficiency. AXIS reserves the right to seek relief regarding those documents if American Specialty injects issues related to underwriting for other NFL teams into the litigation.

**C. AXIS subpoenas Brown & Brown.**

AXIS served a non-party subpoena on Brown & Brown on May 21, 2020.  *See id.*, Ex. 6 ("Subpoena").  Two weeks later, American Specialty's counsel notified AXIS that they also would be representing Brown & Brown in responding to the Subpoena and served a short letter objecting to the Subpoena in its entirety.  *See id.*, Ex. 7.

AXIS responded to Brown & Brown's objection letter on July 10, 2020, explained why Brown & Brown's objections were meritless, and requested an opportunity to meet and confer to resolve Brown & Brown's concerns.  *See id.*, Ex. 8.

**D. AXIS's multiple meet-and-confers with American Specialty and Brown & Brown.**

On July 15, 2020, AXIS's counsel again raised its outstanding March and May Letters with American Specialty and Brown & Brown and requested a telephonic meet-and-confer.  *See id.*, Ex. 9 at 2.  During July 24 and July 31, 2020 phone calls, the parties' counsel met and conferred about the deficiencies with American Specialty's production, including the concerns with American Specialty's written objections, the Production Data Issues, and the Missing Documents, as well as Brown & Brown's refusal to respond to the Subpoena.  *See id.*, Ex. 10.

During those calls, American Specialty claimed:

- It had produced the Missing Documents in the First Production but refused to share the Bates numbers of any of the documents besides those for the Claim File and claim diary, then later backtracked and indicated that it did not know what a claim diary was [*see id.*, Ex. 10 at 5, § I.C];

- The Incorrect Family Metadata was simply due to American Specialty's having omitted logo attachments from the First Production [*see id.*, Ex. 10 at 3, § I.B.1];

- The ESI with Modified Email Subjects were due to American Specialty employees' altering the subjects of emails when forwarding them [*see id.*, Ex. 10 at 3, § I.B.1]; and

- Brown & Brown viewed itself as American Specialty's in-house counsel, and American Specialty had produced some or all of Brown & Brown's responsive documents [*see id.*, Ex. 10 at 7, § II].

4

Shortly thereafter, AXIS sent American Specialty an example of a claim diary and a list of outstanding documents and information that American Specialty and Brown & Brown had agreed to provide to AXIS during the meet-and-confers, including:

- The Bates numbers of the Claim File and claim diary in the First Production;

- A re-production of the First Production with corrected metadata;

- Supplemental responses and objections to RFP Nos. 10-11, 26-28, and 30-32;

- All of Brown & Brown's non-privileged responsive documents;

*See id.*, Ex. 11 at 1; *see also id.*, Ex. 10 at 1-3, §§ I.A-B.

On August 5, 2020, American Specialty represented that the Bates range of the Claim File was AM SPEC 7467-8927.  *See id.*, Ex. 12.  Neither American Specialty nor Brown & Brown provided any of the other requested information at that time.

Then, on August 7, 2020, American Specialty backtracked on its agreement to produce the Missing Metadata and suggested, instead, that AXIS's counsel connect with American Specialty's counsel's technology team ("AS Technology Team") to work through any "difficulties with the data" that AXIS was experiencing..  *See id.*, Ex. 10 at 3, § I.B.2.

**E.  The AS Technology Team confirms the Production Data Issues.**

On August 11, 2020, AXIS's counsel participated in a call with the AS Technology Team *See id.*, Ex. 10 at 3-4, § I.B.3.  With respect to each of the Production Data Issues, the AS Technology Team agreed:

- The Missing Metadata was, in fact, missing from the First Production, and American Specialty could quickly correct this deficiency;

- The Incorrect Family Metadata was an error with the First Production unrelated to omitting logo attachments and admitted to having no immediate explanation; and

- The discrepancies with the ESI with Modified Email Subjects were not due to the emails having been forwarded and admitted to having no immediate explanation.

*See id.* The AS Technology Team asked for an opportunity to investigate the issues and follow up with AXIS, but AXIS did not receive any follow-up after that call. *See id.*

### F. AXIS sends its third Rule 26(f) letter.

AXIS sent its third Rule 26(f) letter to American Specialty on August 18, 2020 ("August Letter"), in which it reiterated the same concerns with American Specialty's discovery responses that it had raised in its March and May Letters and during the July telephonic meet-and-confers. *See id.*, Ex. 10 at 5-6, §§ I.B-C. AXIS also renewed its request that Brown & Brown confirm whether it had collected and produced all of its records responsive to the Subpoena that were neither privileged nor protected and, if not, that it do so. *See id.* at 7, § II.

### G. American Specialty and Brown & Brown fail to correct the deficiencies.

On August 31, 2020, American Specialty served Amended Responses to the RFPs ("Amended RFP Responses"), along with a 23-page print-out listing certain generic metadata for the documents in the First Production ("Metadata Printout"). *See id.*, Ex. 13. As AXIS outlined in a September 5, 2020 email to American Specialty and Brown & Brown, neither the Amended RFP Responses nor the Metadata Printout resolved any of the deficiencies with American Specialty's RFP Responses or First Production. *See id.*, Ex. 14 at 2-3 (re-raising concerns with Amended RFP Responses, objecting to the Metadata Printout, and requesting response to August Letter).[2] Accordingly, AXIS advised American Specialty and Brown & Brown that it would be asking the Court for an informal discovery conference. *See id.*

---

[2]   American Specialty sent a replacement file for the Metadata Printout on September 9, 2020, but that file still did not provide all of the Missing Metadata, correct the Incorrect Family Metadata issues, or address or explain the genesis of the ESI with Modified Email Subjects. *See id.*, Ex. 15.

**H.  AXIS asks the Court for help addressing the discovery dispute.**

On September 9, 2020, AXIS requested a telephonic status conference with the Court to discuss the parties' discovery dispute.  *See* D.E. 63.  The Court granted AXIS's request and scheduled a telephonic status conference for September 30, 2020.  *See* D.E. 64.

**I.  AXIS continues its discovery efforts.**

In the meantime, on September 23, 2020, AXIS requested to schedule depositions of five American Specialty employees—Stan Sheehan, Douglas Sundquist, Bonnie Rickard, MJ Thompson, and Mark Thompson—and a Rule 30(b)(6) deposition of American Specialty. *See* Gutwein Decl., Ex. 16.  AXIS advised that it was scheduling these depositions, despite the outstanding deficiencies with American Specialty's discovery responses, because of the parties' approaching discovery deadlines and subject to parties' resolving the discovery issues during the upcoming court conference.  *See id.*, Ex. 16.

**J.  American Specialty and Brown & Brown first respond to AXIS's Rule 26(f) letters.**

For the first time, on September 29, 2020, American Specialty and Brown & Brown served a written response to AXIS's Rule 26(f) letter.  *See id.*, Ex. 17.  The letter offered incorrect explanations for the ESI with Modified Email Subjects and Missing Documents and otherwise refused to grapple with the Production Data and Missing Documents Issues.  *See id.*, Ex. 17, § I.  It also advised that American Specialty had produced all of Brown & Brown's non-privileged responsive documents.  *See id.*, Ex. 17, § II.

**K.  The Court holds a discovery conference.**

During the September 30, 2020 telephonic status conference, American Specialty agreed to provide AXIS with additional information regarding its discovery responses but, among other things, objected that it would be too burdensome to provide AXIS with certain of the Missing

Metadata.  *See id.*, Ex. 18.  The Court encouraged the parties to resolve their discovery issues but authorized AXIS to file a motion to compel if they remained unresolved.  *See* D.E. 65.

**L.  American Specialty maintains its improper discovery positions.**

After the conference, AXIS and American Specialty exchanged several communications regarding the deficiencies with American Specialty's First Production.  *See, e.g.*, Gutwein Decl., Exs. 19 & 20.  AXIS, on the one hand, continued to renew its requests that American Specialty (a) identify the purported Missing Documents in its First Production, including the claim diary, and produce those Missing Documents it had not already produced; and (b) fix the Production Data Issues or explain its burden objection to doing so, all before AXIS began deposing various American Specialty employees.[3]  *See id.*, Exs. 20 & 35-39.  Conversely, American Specialty (a)  again refused to explain or correct any of the Production Data Issues, (b) mischaracterized certain documents in its First Production as the Missing Documents, though they were not; and (c) again directed AXIS to what it contended was the "Claim File" in its First Production and advised that it was working "to determine whether [a claim diary] separate of the claim file would have existed."  *See id.*, Ex. 19 ("October 9 Letter").  When AXIS pointed out the inaccuracies in American Specialty's explanations, American Specialty did not respond or take any further action to remedy its discovery deficiencies.  *See, e.g.*, *id.*, Ex. 21.

**M. American Specialty's witnesses and documents confirm the discovery deficiencies.**

AXIS deposed American Specialty employees Stan Sheehan[4] and Doug Sundquist on December 9 and 14, 2020, respectively.  Mr. Sheehan testified that he did not know whether the

---

[3]  To assist American Specialty with redressing the missing claim diary issue, specifically, AXIS also enclosed an excerpt of the claim diary that it had located in its ESI.  *See id.*, Ex. 20.

[4]  Mr. Sheehan oversaw American Specialty's underwriting department during the time period relevant to the parties' dispute.

complete Underwriting File, housed in American Specialty's Enterprise software system, had been provided to American Specialty's counsel. *See id.*, Ex. 22 (Sheehan Dep., 161:9-164:2).

On January 8, 2021, American Specialty produced an additional 44 documents ("Second Production"), which further underscored the deficiencies with American Specialty's discovery responses. *See id.*, Ex. 21 at 3. The Second Production contained what appear to be the Excess Claim notes (also known as the "claim diary"), which American Specialty had previously misrepresented were either (a) in its First Production with the purported Claim File, or (b) did not exist. *See id.*, Ex. 21 at 3-4. Here is a snapshot of the top portion of that document:

**Claims Incident/Adjuster Note Export as of 11-24-2020 15:43**
**Account Name:** Buccaneers Team LLC
**Policy Number:** AXXS01102409-13
**Claimant Name:** LAWRENCE TYNES
**Claim Number:** 43284200101
**Loss Date:** 07-01-2013

Click here to visit www.americanspecialty.com

### Adjuster Notes

| Date | Entered By | Category | Subject | Note | Attachment |
|---|---|---|---|---|---|
| 2/8/2019 | MJTHOMPS | Not Specified | None | MJTHOMPS CHANGED RESERVE BY <$10,000.00> TO $.00. | |
| 2/8/2019 | MJTHOMPS | Not Specified | None | File Close Reason - Close | |
| 2/7/2019 | MJTHOMPS | Coverage Issue | No activity | Still no activity. Brown & Brown has closed its file. Should we do so as well? | Open |
| 11/26/2018 | MJTHOMPS | Coverage Issue | No Activity | No activity since last notepad entry. | Open |
| 11/26/2018 | MJTHOMPS | Coverage Issue | Status? | Checking status with Dan Weir of American Specialty. | Open |
| 10/25/2018 | MJTHOMPS | Coverage Issue | Complaint? | I am not aware of AXIS having filed a complaint/lawsuit yet in this matter. I am not involved in the discussion between Amer Spec and AXIS regarding coverage. I'm simply holding a file open for any pymts that might need to be made. | |
| 9/27/2018 | MJTHOMPS | Coverage Issue | Arbitration / Lawsuit | Parties decided against arbitration. AXIS stated it would file suit in Federal Court, but that has not happened to date. | Open |
| 9/21/2018 | MJTHOMPS | Coverage Issue | Arbitration? | Arbitration conducted? Result? | |
| 7/20/2018 | MJTHOMPS | Coverage Issue | Arbitration | The parties have agreed to arbitration. | Open |
| 7/12/2018 | MJTHOMPS | Coverage Issue | Coverage Status | Checking status of the excess coverage dispute with AXIS. If the matter has been resolved, I will close this file. | |
| 6/4/2018 | MJTHOMPS | Coverage Issue | Coverage Status | No resolution yet on the coverage issue. | |
| 4/4/2018 | MJTHOMPS | Coverage Issue | Coverage Status | No resolution yet on the coverage dispute. | |

*Id.*, Ex. 28. The Excess Claim notes also reflect the existence of (i) documents linked to those notes, (ii) a separate GL Claim File, and (iii) a Brown & Brown Claim File—none of which American Specialty has produced. *See id.*; *see also id.*, Ex. 21 at 3-5. Worse still, the Excess Claim notes are dated November 24, 2020—apparently indicating that American Specialty had printed them nearly two months earlier and waited to produce them until AXIS had already

deposed two American Specialty witnesses in December and two business days before AXIS

was scheduled to depose American Specialty employee MJ Thompson.[5] *See id.*, Ex. 28.



### N. AXIS's post-deposition meet-and-confer efforts are unavailing.

The next day, based on American Specialty's witnesses' testimony, AXIS:

- Re-raised the discovery deficiencies with American Specialty and demanded it immediately redress them;

---

[5] At least one other document in American Specialty's Second Production, which appears to be related to the underwriting of the General Liability and Excess Policies, similarly reflects that it, too, was printed on November 24, 2020. *See id.*, Ex. 21 at n.3. Even though Messrs. Sheehan and Sundquist may have knowledge about information in this document, and American Specialty knew AXIS was to depose these individuals in December 2020, American Specialty did not produce the document until after their depositions were completed.

[6] Ms. Thompson oversaw American Specialty's claims department at all times relevant to the parties' dispute.

- Explained that American Specialty's discovery conduct was prejudicial; and

- Advised that it could not depose other American Specialty witnesses, then-scheduled for January 22 and 29, 2021, until American Specialty corrected all of the deficiencies. *See id.*, Ex. 21 at 5.

By letter dated February 2, 2021, American Specialty confirmed its refusal to correct its discovery deficiencies and provided the same explanations for the discovery deficiencies that its AS Technology Team had already debunked. *See id.*, Ex. 24.

## II.   Legal Standard

Rule 26(b)(1) authorizes a party to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." When a party provides incomplete or evasive discovery responses, the discovering party may seek an order compelling discovery under Rule 37(a). The objecting party then bears the burden of showing "with specificity" that the discovery sought is improper; generic objections are insufficient. *Marshall v. GE Marshall, Inc.*, No. 2:09 CV 198, 2012 WL 5831195, at *3 (N.D. Ind. Nov. 15, 2012).

## III.   Argument

American Specialty is wrongfully withholding Missing Documents and Production Data that (1) its witnesses, documents, and technology team have confirmed exist; (2) it either agreed to produce or failed to properly object to producing; and (3) are central to the parties' claims and defenses. Moreover, neither it nor Brown & Brown have produced all of Brown & Brown's non-privileged responsive documents. Instead, American Specialty and Brown & Brown have

11

toggled between ignoring AXIS's meet-and-confer efforts and offering perverse explanations for the discovery deficiencies that only raise more questions.

American Specialty's and Brown & Brown's improper discovery conduct has prejudiced AXIS.  It has deposed two key American Specialty witnesses without the benefit of this missing discovery and had to delay other depositions because American Specialty and Brown & Brown still refuse to provide it.  Their refusal to fulfill their discovery obligations also threatens to derail the parties' case schedule—AXIS cannot go forward with discovery without some of the most basic documents and information central to its claims.  AXIS thus seeks an order compelling (i) American Specialty to fully respond to its discovery by producing all Missing Documents and correcting all Production Data Issues, (ii) Brown & Brown to fully respond to the Subpoena, and (iii) both parties to pay the expenses AXIS has incurred in pursuing this motion.

### A.  American Specialty must produce the Missing Documents.

To date, American Specialty has improperly refused to produce the complete Underwriting and Claim Files and all non-privileged or protected responsive documents and communications American Specialty shared internally or with third-parties, even though it has confirmed this information exists and agreed to produce it.  Because Rule 26 entitles AXIS to these documents, American Specialty should be ordered to produce them.

#### 1.  American Specialty must produce the Underwriting and Claim Files.

Absent a showing that AXIS's request for the complete Underwriting and Claim Files is improper, or, instead, that the files do not exist, Rule 26 requires American Specialty to produce them.  *See, e.g.*, *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009) (confirming party seeking to avoid discovery "must show with specificity that request is improper").  American Specialty has made no such showing here.

To the contrary, American Specialty has admitted that it has (a) the Underwriting File, and (b) the GL and Excess Claim Files.[7]  *See, e.g., supra* at § I.M.  It also agreed to produce these files in response to AXIS's discovery requests.  *See, e.g.*, Gutwein Decl., Ex. 2 (RFP Resp. Nos. 1-3) (asserting no specific objections and agreeing to "produce responsive, non-privileged documents and communications within its possession, custody or control" "*including any claim file and claim diary*, regarding Tynes, the Tynes Claim, the Tynes Lawsuit, or the Tynes Settlement," and "*underwriting files, and analysis and decision-making on underwriting considerations*, regarding the GL Policy and Excess Policy" (emphasis added)).[8]

American Specialty's failure, therefore, to produce the complete GL Claim File, including the claim diary, all documents linked in that and the Excess Claim diaries, and all documents in the Underwriting File renders its production "incomplete."[9]  *Pringle v. Garcia*, No. 2:09-CV-22-PPS-PRC, 2013 WL 1911484, at *4 (N.D. Ind. May 8, 2013) (finding document production is incomplete when witness testimony confirms existence of unproduced, responsive documents and objecting party does not show "that the [documents] fall[] outside the scope of discovery").  Moreover, as American Specialty's witnesses and its Second Production have since confirmed, American Specialty's repeated representations over many months (and many meet-and-confers) that it *had* produced the GL and Excess Claim Files and that the claim diaries either

---

[7]   In fact, the parties' contract requires American Specialty to create and maintain these files for AXIS, deems AXIS the owner of them, and requires American Specialty to produce them to AXIS upon request.  *See, e.g.*, D.E. 44, ¶¶ 31, 47; Gutwein Decl., Ex. 5 at 3-4, § II.B.1.

[8]   In addition to RFP Nos. 1 through 3, the Missing Underwriting and Claim Files are likely responsive to other requests as well.  *See, e.g.*, Gutwein Decl., Ex. 1 at RFP Nos. 2 & 4.  In fact, American Specialty objected to RFP Nos. 2 and 4 as "duplicative of" RFP Nos. 1 and 3 (and raised no other objections to their scope).  *Id.*, Ex. 2, at Nos. 2 & 4 (RFP Resps.).

[9]   Other documents American Specialty produced confirm that it has not produced key underwriting documents.  For example, American Specialty produced *seven* copies of an underwriting-related email, each without the email's critical attachment:  American Specialty's excess referral worksheet.  *See, e.g., id.*, Ex. 5 at 4; *id.*, Ex. 29.  American Specialty's failure to produce the attachments is also contrary to Rule 34.  *See infra* § III.B.

were included in its First Production or did not exist were, at best, "evasive" and, at worst, intentionally misleading.  *See, e.g.*, *Hobson v. Trans Union, LLC*, No. 1:13-CV-54, 2014 WL 12775013, at *5 (N.D. Ind. June 6, 2014) (compelling supplemental response to RFP when objecting party responded with "qualifications and limitations" that failed to disclose existence of responsive documents); *see supra* at § I.M. (recounting Sheehan and Thompson testimony on existence of Underwriting and Claim Files and claim notes and explaining that American Specialty eventually produced set of notes for Excess Claim in its Second Production).  And the late-produced Excess Claim notes confirm that the GL Claim File exists and contains relevant, responsive "notes and other information," *see* Gutwein Decl., Ex. 28:

| 6/8/2016 | MJTHOMPS | Investigation | Update | See primary file for updates. | |
| 6/15/2015 | MJTHOMPS | Investigation | Update | See primary file for updates. | |
| 5/1/2015 | MJTHOMPS | Carrier Communication | * * CARRIER INSTRUCTIONS * * | AXIS is handling this file. | |
| 5/1/2015 | MJTHOMPS | Carrier Report | LLR - Initial | LLR attached. | Open |
| 5/1/2015 | MJTHOMPS | Investigation | Info/ Notes/ Etc | See primary claim file # 41131000101 for notes and other information. | |

American Specialty's argument during the meet-and-confer process that it need not produce these documents because AXIS had access to them during the parties' business relationship is without merit.  First, American Specialty did not object to responding to AXIS's RFPs on that basis, so the objection is waived.  *See generally id.*, Ex. 2; *see, e.g.*, *Peterson v. Farrakhan*, No. 2:03CV319, 2005 WL 2465254 (N.D. Ind. Oct. 5, 2005) (rejecting objections made for the first time in response to motion to compel and imposing sanctions when party previously had agreed to produce documents).  Second, even if it had timely asserted this objection, it is not a legitimate basis for avoiding discovery.  American Specialty does not allege that AXIS *has* the requested documents, only that it may have had access to them at some point during the parties' business relationship.  *See, e.g.*, *Earl v. Xerox Bus. Servs.*, No. 1:13-cv-01847-LJM-MJD, 2014 WL 4804279, at *1 (S.D. Ind. Sept. 26, 2014) (overruling objection that party seeking discovery had access to requested information before litigation).  Rule 26(b)(1) permits

AXIS to seek discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."  Third, even if American Specialty were objecting on the basis that AXIS actually *had* the requested documents in its possession, absent a showing of the burden AXIS's requests would impose, that objection, too, is improper.  *See, e.g.*, *Doe v. Purdue Univ.*, No. 2:17-CV-33-JPK, 2019 WL 4565501, at *3 (N.D. Ind. Sept. 19, 2019) (rejecting objection based on unsupported allegation that requesting parties already possessed some of the requested information); *Odongo v. City of Indianapolis*, No. 1:14-cv-00710-TWP-MJD, 2015 WL 420110, at *3 (S.D. Ind. Jan. 30, 2015) (same, and noting that failure to produce such documents "deprives [moving party] of the value in knowing whether certain discovery lies within the possession, custody, or control" of objecting party).[10]

Rather, American Specialty's failure to produce these documents is squarely contrary to its discovery obligations and prejudicial to AXIS.  And its constant obfuscation about the existence of and its process for collecting, reviewing, and producing these responsive documents that it *agreed to produce*, culminating in its sudden partial production of "documents which were previously described as nonexistent," raises "legitimate questions about [its] process for collecting, identifying, and producing responsive documents."  *Stage v. Restoration Hardware, Inc.*, No. 2:14-cv-077, 2015 WL 631113, at *3 (S.D. Ohio Feb. 12, 2015).

**2.  American Specialty must produce all responsive communications.**

Also contrary to its discovery obligations, American Specialty is refusing to produce responsive internal and third-party communications that are responsive to two types of RFPs:

- In several RFPs, AXIS requested documents and communications "to, from, or between [American Specialty] or AXIS" that regard various aspects of the parties' dispute.  *See, e.g.*, Gutwein Decl., Ex. 1 (RFP Nos. 10, 11).

---

[10]  And, as noted *supra* n.7, apart from its discovery obligations, American Specialty has a separate contractual obligation to AXIS to produce all underwriting and claim files to AXIS upon request.

- In other RFPs, AXIS requested "[a]ll Documents and Communications substantiating or supporting" American Specialty's denial of certain allegations in AXIS's Second Amended Complaint.  *Id.*, Ex. 1 (RFP Nos. 26-28, 30-32).

American Specialty initially responded to these RFPs one of two ways:  it agreed to produce only responsive documents and communications either (a) with AXIS, *see id.*, Ex. 2 (RFP Resp. Nos. 10-11, 28, 30-32), or (b) with Marsh, *see id.*, Ex. 2 (RFP Resp. Nos. 26-27).  After AXIS questioned whether American Specialty was refusing to produce responsive (1) its internal communications, and (2) communications it had with other third parties, American Specialty served supplemental RFP Responses that did not resolve the issue.  *See supra* §§ I.B, I.D; *see also, e.g.*, Gutwein Decl., Ex. 13 (Am. RFP Resp. Nos. 10-11).

So then AXIS identified specific internal and third-party communications that it cannot locate in American Specialty's First Production.  *See, e.g.*, *supra* at §§ I.B, I.D, I.F, & I.L.  But American Specialty responded with only inconsistent and inaccurate explanations.  For example, American Specialty advised for the first time in its October 9, 2020 letter that it did not interpret several of AXIS's RFPs as requesting internal communications at all—a reading that is plainly divorced from the RFPs' text and incorrect but that appears to confirm AXIS's suspicion:  American Specialty has not produced these documents.  *See* Gutwein Decl., Ex. 19 at 1-2.  Yet, American Specialty also appeared to claim that it had produced these communications by pointing to various email threads containing some version of the communications somewhere within the email string.  *See id.*, Ex. 19 at 2-3.  But that too is insufficient and similarly confirms American Specialty has not produced these documents.

Contrary to American Specialty's apparent argument that it need only produce the most inclusive[11] version of an email thread, rather than a copy of each email in the thread with its

---

[11]   "Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the party's electronic files. A most inclusive email thread is one that

corresponding attachments, the Rules preclude American Specialty from unilaterally adopting that disabling discovery limitation. *See, e.g.*, *Martinelli*, 2016 WL 1458109 at *5 (entering agreed ESI protocol allowing for production of only inclusive emails, provided that the inclusive thread "contains all of the prior or lesser-included emails, including attachments"). And there is no question AXIS rejected this approach here:  its RFPs asked American Specialty to produce all non-identical versions of each document. *See* Gutwein Decl., Ex. 1 at 19 (defining "Document" to include "[a]ny draft or non-identical copy of a document"). American Specialty did not specifically object to this request. *See generally id.*, Ex. 2.

In fact, American Specialty's approach is particularly problematic (and inappropriate) for several reasons. American Specialty has admitted that its employees often altered the content of emails when forwarding or replying to them. *See id.*, Ex. 17, § I.B. And neither it nor its Technology Team has provided any cogent explanation for the ESI with Modified Email Subjects. *See supra* at §§ I.E, I.N. Documents in the First Production also confirm that the purportedly "inclusive" emails sometimes contain *altered* versions of earlier emails in the thread and often do not incorporate earlier emails' attachments. *See, e.g.*, *Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276, 2016 WL 5897732, at *2 (N.D. Cal. Oct. 11, 2016) (entering agreed ESI protocol allowing production of inclusive emails in some circumstances but prohibiting the practice "if the later message contains different text . . . or senders or recipients, or does not include an attachment that was part of the earlier message"); *MedIdea, L.L.C. v. DePuy Orthopaedics, Inc.*, No. 1:17-cv-11172-GAO, 2017 WL 9289450, at *5 (D. Mass. Oct. 20, 2017) (adopting similar approach).

---

contains all of the prior or lesser-included emails, including attachments, for that branch of the email thread." *Martinelli v. Johnson & Johnson*, No. 2:15-cv-01733-MCE-EFB, 2016 WL 1458109, at *5 (E.D. Cal. Apr. 13, 2016).

17

As just one example, AXIS obtained a copy of the Buccaneers' email to American Specialty with its application materials for the GL and Excess Policies directly from Marsh. Marsh disclosed to American Specialty that the team's previous insurer had "decided to place a concussion exclusion on th[e] renewal" and that the Buccaneers intended "to renew the program with expiring coverages."  Gutwein Decl., Ex. 25.  American Specialty did not produce its version of Ms. Rowe's email and, instead, produced only an internal American Specialty thread *forwarding* Ms. Rowe's email—with a significant alteration:  American Specialty's version of the same email *omits* Ms. Rowe's reference to a concussion exclusion.  Here is a comparison of both emails:

Marsh Copy

| | |
|---|---|
| From: | Rowe, Jennifer </O=MCG/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=B585672F-F035C9EC-852573DB-71F67E> |
| To: | Doug Sundquist |
| Sent: | 5/9/2013 6:45:26 PM |
| Subject: | Buccaneers Limited Partnership |
| Attachments: | Auto Application 2013.doc; Casualty Submission.xls; Commercial Insurance Application 2013.doc; customer loss detail report.pdf; P1610836.PDF; Professional Sports Info Form App 2013.pdf; Umbrella Application 2013.doc |

Doug, hope all is well.  Spoke with Brandon on this as we were discussing The Falcons renewal.

Coverage is currently written through K&K who has decided to place a concussion exclusion on this renewal.  It is our intent to renew the program with expiring coverages.

American Specialty Copy

**From:** Rowe, Jennifer [mailto:Jennifer.Rowe@marsh.com]
**Sent:** Thursday, May 09, 2013 2:45 PM
**To:** Doug Sundquist
**Subject:** Buccaneers Limited Partnership

Doug, hope all is well.  Spoke with Brandon on this as we were discussing The Falcons renewal.

Coverage is currently written through K&K .  It is our intent to renew the program with expiring coverages.

Gutwein Decl., Exs. 25 & 26.  Mr. Sundquist could not explain the alteration in his deposition, and without American Specialty's complete production, AXIS is handicapped in sourcing it.  *See id.*, Ex. 27 (Sundquist Dep., 40:23-41:20).

In addition to the many communications that American Specialty failed to produce but that AXIS has been able to confirm exist by reference to other documents, AXIS has reason to believe that other documents are missing from American Specialty's production, too.  For example, American Specialty produced only *two* internal communications regarding the GL Policy, the Excess Policy, or the Tynes Claim between March and April 2015, the key time period during which the Tynes Claim arose.  *Id.*, Ex. 5 at 4-5, § II.B.3.  One was an April 17, 2015 email string that Mr. Sheehan sent to six other American Specialty employees, but, in addition to failing to produce all of the earlier emails in the string, American Specialty did not produce any of the six recipients' responses to that email, if they exist.  *Id.*  And because American Specialty's document production is rife with gaps, inconsistencies, and altered email content that raise serious questions about its process for responding to the RFPs, AXIS does not know whether none of these six recipients responded to this email or, more likely, whether American Specialty (1) is objecting to producing these missing internal and third-party communications; (2) failed to collect them; or (3) no longer has them in its possession, custody, or control, which would raise questions about spoliation.  *See, e.g.*, *Stage*, 2015 WL 631113, at *3 (confirming that a party's unexplained and unilateral decision not to produce all responsive emails in a thread is "unusual" and raises "legitimate questions about [the producing party's] process for collecting, identifying, and producing responsive documents").

AXIS should not have to play a guessing game with respect to American Specialty's documents.  *See, e.g.*, *United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc.*, 271 F.R.D. 487, 496 (N.D. Ind. 2010) (granting motion to compel when moving party acted "diligent[ly] … to discover relevant information" and objecting party provided evasive and incomplete responses that concealed existence of responsive documents); *Hobson*, 2014 WL 12775013 at *5

(compelling supplemental discovery responses and ordering objecting party to attest to its discovery efforts).  Instead, consistent with its discovery obligations, American Specialty should be ordered to immediately produce all of these Missing Documents now.

### 3.   AXIS is entitled to all of Brown & Brown's responsive documents.

American Specialty's response on behalf of Brown & Brown to the Subpoena similarly fails to satisfy American Specialty's and Brown & Brown's discovery obligations under Rules 34 and 45, respectively.  In response to AXIS's repeated meet-and-confer efforts, American Specialty has now represented that it collected and produced all of Brown & Brown's non-privileged, responsive documents.  *See* Gutwein Decl., Ex. 17, § II.  But other discovery calls into question the accuracy of this representation.

For example, the Excess Claim notes that American Specialty produced on January 8, 2020 establishes that Brown & Brown, too, maintained a relevant claim file:

| Date | Entered By | Category | Subject | Note |
|------|-----------|----------|---------|------|
| 2/8/2019 | MJTHOMPS | Not Specified | None | MJTHOMPS CHANGED RESERVE BY <$10,000.00> TO $0.00. |
| 2/8/2019 | MJTHOMPS | Not Specified | None | File Close Reason - Close |
| 2/7/2019 | MJTHOMPS | Coverage Issue | No activity | Still no activity. Brown & Brown has closed its file. Should we do so as well? |

Gutwein Decl., Ex. 28.  And the Subpoena explicitly requested just this type of information.  *See, e.g., id.*, Ex. 6, No. 5.  Yet, nothing in American Specialty's Productions—or in the responses to AXIS's meet-and-confer efforts—discloses whether either American Specialty or Brown & Brown collected, reviewed, and produced this claim file.  And, as with American Specialty's Missing Documents, Brown & Brown's failure to produce its claim file, which AXIS unambiguously requested and which is unquestionably relevant to the parties' dispute, raises "legitimate questions about [its] process for collecting, identifying, and producing responsive documents."  *Stage*, 2015 WL 631113 at *3.

Nor may Brown & Brown stand on its blanket overbreadth and undue burden objections to avoid this discovery.  *See* Gutwein Decl., Ex. 7 at 2-3.  Like American Specialty, Brown &

Brown bears the burden of "show[ing] why a particular discovery request is improper" "with specificity." *United Consumers Club*, 271 F.R.D. at 495 (quoting *Gregg v. Local 305 IBEW*, No. 1:08-CV-160, 2009 WL 1325103, at *8 (N.D. Ind. May 13, 2009)). Brown & Brown's "reflexive invocation of the same baseless, often abused litany" of generic objections does not satisfy this burden. *Id.* (quoting *Cunningham*, 255 F.R.D. at 478); *see also McKinney v. ICON Transp. Co.*, No. 4:04-cv-81, 2005 WL 8178477, at *2 (N.D. Ind. Aug. 9, 2005) (confirming party objecting to subpoena bears burden of showing with specificity that discovery is improper). And because Brown & Brown did not serve specific objections to the scope of the Subpoena, it has waived them. *See, e.g.*, *Ott v. City of Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012) (noting that Rule 45 requires non-parties "to raise all objections at once, rather than in staggered batches," and holding that failure to assert specific substantive objections within time required by Rule 45(c)(2)(B) results in waiver of objections).

Accordingly, along with its own responsive documents, American Specialty should be required to produce all of Brown & Brown's, as well.

### B. American Specialty must conform its production to Rule 34(E)'s requirements.

In addition to the Missing Document issues, American Specialty's productions suffer from serious Production Data Issues that appear, at minimum, to stem from its failure to produce its ESI as Rule 34(E) requires and as AXIS requested. Rule 34(E) requires a party to produce its responsive ESI (a) as it is kept in the usual course of business, or (b) organized and labeled to correspond with the categories in the requests. It also permits a party to request the form for producing ESI and instructs that, even absent the requesting party's specifying the form of production, a party must produce its ESI "in a form or forms in which it is ordinarily maintained or in a reasonably usable form." Fed. R. Civ. P. 34(E)(ii); *see also id.* (Advisory Cmte. Note on

2006 Am.).  The Rule's notes further confirm that "the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation."  *Id.* (Advisory Cmte. Note on 2006 Am.); *see also Jannx Med. Sys., Inc. v. Methodist Hosps., Inc.*, No. 2:08-CV-286-PRC, 2010 WL 4789275, at \*4 (N.D. Ind. Nov. 17, 2010) (citation omitted).

American Specialty's Productions do not satisfy any of these standards.  As a threshold matter, AXIS requested that American Specialty produce its ESI in a specific format.  *See* AXIS RFPs, Instr. No. 4.  American Specialty's general objection to producing its ESI in this format is boilerplate devoid of any specificity and, therefore, not well-taken.  *Compare* Gutwein Decl., Ex. 2, Gen. Obj. No. 1, *with, e.g.*, *Cunningham*, 255 F.R.D. at 478.  On this basis alone, the format of American Specialty's Productions is, therefore, deficient.[12]

Even if American Specialty had a legitimate basis for refusing to comply with AXIS's requested form of production, Rule 34 still obligated American Specialty to produce its documents in a "reasonably usable form," either as it maintains them in the usual course of its business or organized and labeled in response to AXIS's Requests.  But American Specialty did neither.  Instead, it:

- Omitted basic metadata, like custodian information, that precludes AXIS from connecting the ESI American Specialty produced to its custodian (*e.g.*, owner);

- Produced its ESI with errant (or altered) family metadata, which (a) links documents as related (for example, as a parent email and children attachments) when those documents are, in fact, unrelated, and (b) fails to link documents that are, in fact,

---

[12]    AXIS is simply seeking the reciprocal metadata that it provided to American Specialty with its productions.

related, precluding AXIS from connecting parent emails and their children attachments;[13] and

- Produced documents that appear to have been modified from their original form without any explanation or metadata that would allow AXIS to ascertain information regarding the modifications.[14]

*See, e.g.*, Gutwein Decl., Ex. 5 at 2, § II.A.

AXIS first objected to these deficiencies with American Specialty's First Production, identified examples of them for American Specialty, and asked American Specialty to correct them last May, and it reiterated its request many times since. *See, e.g., id.*, Exs. 5, 10, 20, 21. And when AXIS discussed these issues with the AS Technology Team in August 2020, at the request of American Specialty's counsel, the AS Technology Team admitted to seeing these same issues with American Specialty's First Production, conceded it had no immediate explanation for them, and agreed to investigate and work to remedy them. *See, e.g., id.*, Ex. 10 at 3-4, § I.B.3. Yet American Specialty still has not corrected the Missing Metadata or Incorrect Family Metadata and has not explained the ESI with Modified Email Subjects—in other words,

---

[13]  For example, metadata for the document with Bates number AM SPEC 847 reflects that that "parent" email has 14 "children," but the face of the email itself reflects only two attachments (*e.g.*, two children), only one of which American Specialty actually produced. *See, e.g.*, Gutwein Decl., Ex. 5 at 2, § II.A. Similarly, the metadata for AM SPEC 1796 deems that document a "parent" of a family of 15 documents, but it is, in fact, a scanned copy of a September 13, 2016 letter with no children. And many of the documents that the metadata erroneously designates as "children" of that "parent" letter are, themselves, standalone emails, some with attachments. *See, e.g., id.*, Ex. 30; *id.*, Ex. 5 at 2, § II.A.

[14]  For example, the metadata for the document AM SPEC 858, an email that Tim McGee sent to Bonnie Rickard, copying Brian Thompson, at 4:06 PM on May 28, 2013, reflects a subject line of "130528 XS Approval from AXIS." But AXIS's original copy of that email, from Tim McGee's files, confirms that the subject line of his May 28, 2013 email was actually "RE: 130523 Buccaneers Limited Partnership Referral," which is consistent with the subject line in the preceding email in both American Specialty's and AXIS's versions of this email string. *Compare id.*, Ex. 31, *with id.*, Ex. 32. Similarly, AM SPEC 2755 reflects an April 10, 2015 email that Doug Sundquist sent to Stan Sheehan at 6:21 PM, copying Bonnie Rickard, Brandon Schall, Jennifer Fritz. In the version of the email reflected in AM SPEC 2755, the subject line reads "150410 EL Claim – Tampa Bay Bucs." However, AM SPEC 1919 reflects the exact same email, with the exact same sender, recipients, and time stamp, except the subject reads "FW: Tampa Bay Bucs." *Compare id.*, Ex. 33, *with* Ex. 34; *see also, e.g., id.*, Ex. 5 at 2-3, § II.A.

it has not satisfied its obligations under Rule 34.

Under similar circumstances, courts have required the producing party to produce its ESI with metadata and as it is stored in the usual course or in a reasonably usable format. *See, e.g.*, *Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L.*, No. 04 C 3109, 2006 WL 665005, at *3 (N.D. Ill. Mar. 8, 2006) (requiring producing party to reproduce its electronic media with "information such as the creation and modification dates of a document, email attachments and recipients, and metadata" because the information would "allow [the plaintiff] to piece together the chronology of events and figure out, among other things, who received what information and when"); *PSEG Power N.Y., Inc. v. Alberici Constructors, Inc.*, No. 1:05-CV-657(DNH/RFT), 2007 WL 2687670, at *2-11 (N.D.N.Y. Sept. 7, 2007) (requiring producing party to re-produce its production, at its expense, because its initial production contained numerous emails divorced from their attachments and without the metadata necessary to understand how the ESI related to each other); *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, No. CIV.A. 07-2319-CM, 2009 WL 722056, at *6 (D. Kan. Mar. 18, 2009) (order producing party to produce certain custodians' personal store files from Microsoft Outlook to assist the receiving party "in determining when the emails and attachments were created"). American Specialty should likewise be compelled to fulfill its Rule 34 obligations.

### C. AXIS should be awarded its fees and costs in pursuing this discovery.

Finally, American Specialty and Brown & Brown should be ordered to pay the fees AXIS has incurred in pursuing this discovery. Rule 37(a)(5) requires the Court to award a party who prevails on a motion to compel its "reasonable expenses incurred in making the motion, including attorney's fees," unless the non-moving party shows that its position was substantially justified or other circumstances would make the award unjust. *See also, e.g.*, *Venturedyne, Ltd.*

*v. Carbonyx, Inc.*, No. 2:14-CV-351-RL-JEM, 2017 WL 2590737, at *2 (N.D. Ind. June 15, 2017); *Zendian v. Ind. Dep't of Child Servs.*, No. 2:17-CV-174-RL-JEM, 2018 WL 2740162, at *1 (N.D. Ind. June 7, 2018).  Neither exception applies here.

AXIS engaged in numerous meet-and-confers with American Specialty and Brown & Brown about the significance of the Production Data Issues and Missing Documents.  *See supra* at §§ I.B, I.D-E, I.G, I.L, I.N.  American Specialty and Brown & Brown have stonewalled at every turn.  They have unnecessarily delayed and derailed AXIS's discovery efforts and prejudiced AXIS by (i) refusing to investigate the issues that AXIS has raised in good faith, even when their own Technology Team has acknowledged and pledged to investigate them; (ii) repeatedly proffering incorrect, and, at times, misleading, explanations for the deficiencies with their discovery responses; (iii) seemingly holding (for months) key responsive documents, which AXIS had squarely requested and producing them only after AXIS had deposed certain American Specialty witnesses and just days before it was to depose another; and (iv) failing to produce other key documents that American Specialty's own witnesses and documents confirm exist.  American Specialty's and Brown & Brown's discovery conduct is not substantially justified, and no other circumstances render the Court's awarding AXIS its fees in pursuing this discovery unjust.

## CONCLUSION

Consistent with their discovery obligations, (a) American Specialty should be ordered to respond fully to AXIS's discovery, including producing all Missing Documents and correcting the Production Data Issues; (b) Brown and Brown should be ordered to respond fully to the Subpoena; and (c) both parties should be ordered to pay the fees AXIS has incurred in pursuing this discovery.

Dated: February 12, 2021                    Respectfully submitted,

                                             */s/Stephanie L. Gutwein*
                                            Ryan M. Hurley
                                            Stephanie L. Gutwein
                                            Susanne A. Johnson
                                            Emily A. Kile-Maxwell
                                            FAEGRE DRINKER BIDDLE & REATH LLP
                                            300 North Meridian Street, Suite 2500
                                            Indianapolis, IN 46204
                                            (317) 237-0300
                                            Ryan.Hurley@faegredrinker.com
                                            Stephanie.Gutwein@faegredrinker.com
                                            Susanne.Johnson@faegredrinker.com
                                            Emily.KileMaxwell@faegredrinker.com

                                            *Attorneys for plaintiff AXIS Insurance
                                            Company*


## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2021, a copy of the foregoing was filed

electronically. Notice of this filing will be sent to all counsel of record by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.


                                            */s/Stephanie L. Gutwein*