# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| AXIS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-00165-DRL-SLC |
| | ) | |
| AMERICAN SPECIALTY | ) | |
| INSURANCE & RISK SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court is a motion to compel discovery (ECF 72) and an accompanying brief and exhibits (ECF 73-ECF 78)[1] filed by Plaintiff Axis Insurance Company ("Axis") on February 12, 2021. On March 5, 2021, Defendant American Specialty & Risk Services, Inc. ("American Specialty"), filed a response (ECF 83), to which Axis filed a reply with supporting exhibits on March 12, 2021 (ECF 90-ECF 90-2). Accordingly, the matter is fully briefed and ripe for adjudication. For the following reasons, Axis's motion to compel (ECF 72) is GRANTED IN PART and DENIED IN PART.

## I. Background

Axis initiated this matter on April 16, 2019, asserting a single breach of contract claim against American Specialty. (ECF 1). By way of background, Axis contracted with American Specialty "to promote, underwrite, bind, and deliver" its insurance policies to customers. (ECF

---

[1] Axis initially filed its brief and supporting documents with redactions (*see* ECF 73-ECF 75), as well as unredacted versions (ECF 77-ECF 78) with an accompanying motion seeking to file the unredacted versions under seal (ECF 79). Axis maintained that it only sought to seal its brief and accompanying documents to comply with the parties' discovery protective order. (ECF 79; *see* ECF 47-1; ECF 55). Because neither party established good cause in support of maintaining the documents under seal, the Court ultimately denied the motion seeking to seal the unredacted materials. (ECF 93-ECF 94).

73 at 1; *see* ECF 31). Axis alleges that American Specialty exceeded its contractual authority when it underwrote, bound, and delivered a commercial liability insurance policy to the Tampa Bay Buccaneers. (ECF 31 ¶¶ 3-4). More specifically, Axis contends that American Specialty improperly bound it to an excess liability policy ("Excess Policy") to the Buccaneers that included excess employers' liability coverage which Axis did not agree to and that American Specialty did not have the authority to offer. (*Id.* ¶¶ 77-79, 107-08). Subsequently, former placekicker Lawrence Tynes suffered a career-ending injury at the Buccaneers' training facility (the "Tynes Claim"), and brought a worker's compensation claim and lawsuit against the Buccaneers which exhausted the team's general liability policy ("GL Policy") and the Excess Policy. (*Id.* ¶ 115). Axis alleges that due to the Excess Policy it was forced to litigate and settle the Tynes Claim, resulting in various damages to Axis which American Specialty has since refused to indemnify. (*Id.* ¶¶ 135-37).

On October 16, 2019, Axis served American Specialty its first set of forty-four Requests for Production ("RFPs"). (ECF 73 at 1; ECF 74-1). On November 15, 2019, American Specialty served its responses, raising various general and specific objections to the RFPs but otherwise agreeing to produce responsive material. (ECF 74-2).

On March 6, 2020, Axis's counsel sent a letter pursuant to Federal Rule of Civil Procedure 26(f) to American Specialty's counsel taking issue with a variety of American Specialty's objections. In particular, Axis contended that American Specialty's objection to RFPs 10 and 11—namely that the requests were overbroad—did not justify American Specialty's supposed noncompliance with the requests. (ECF 74-3 at 3). Axis also took issue with American Specialty's objections to RFPs 26-28 and 30-32, each of which sought documents

American Specialty believed supported its denial of specific allegations made in Axis's complaint. (*Id.* at 4-5).

On May 15, 2020, Axis sent a second Rule 26 letter again laying out several deficiencies with American Specialty's discovery responses. (ECF 73 at 4; ECF 74 at 5). Specifically, Axis claimed that American Specialty's responses omitted or included incorrect metadata—including missing "family" data and emails that appeared to have altered subject lines and message content—and that American Specialty's responses appeared to omit certain internal documents and communications. (*Id.*). The following week, on May 21, 2020, Axis served a third-party subpoena (the "Subpoena") pursuant to Federal Rule of Civil Procedure 45 on American Specialty's parent company, Brown & Brown Inc. ("Brown & Brown"). (ECF 73 at 5; ECF 74-6). On June 4, 2020, Brown & Brown's counsel sent a letter objecting to the Subpoena on the grounds that the requests were overly broad, unduly burdensome, and sought materials protected by the attorney-client privilege and the work-product doctrine.[2] (ECF 74-7). Axis replied by letter asserting that Brown & Brown's objections were meritless and requested an opportunity to meet and confer with Brown & Brown's counsel about the dispute. (ECF 73 at 4; ECF 74-8).

Counsel met and conferred via phone on July 24 and 31, 2020, concerning the disputes about the RFPs and the Subpoena. (ECF 73 at 5). American Specialty represented that it had in fact produced the allegedly omitted documents, that the missing "family" data was due to leaving out logos from email signatures, that difference between email subjects and content were due to American Specialty employees forwarding the emails, and that many documents responsive to the Subpoena were already produced by American Specialty. (*Id.*). On August 7, 2020, after American Specialty still allegedly failed to produce the metadata Axis requested, Axis's counsel

---

[2] The letter was signed by Attorney Lawrence Ingram of Freeborn & Peters LLP, who also represents American Specialty in this action.

participated in a conference call with members of American Specialty's "technology team," who allegedly confirmed that the requested metadata was indeed missing but could be produced. (*Id.* at 6).

On August 18, 2020, Axis sent a third Rule 26(f) letter again alleging that American Specialty had failed to update its discovery responses to include all responsive documents, despite the various meet and confers. (ECF 74 at 6). On August 31, 2021, American Specialty served an amended RFP response, including a pdf chart showing the Bates numbers of certain production and the corresponding metadata fields related to each Bates stamp: date received, time received, custodian, and document title. (ECF 74-13 at 24-56). Axis's counsel responded by email, again alleging that the amended response was insufficient and requesting that American Specialty respond to its most recent Rule 26 letter. (ECF 74-14). American Specialty subsequently sent another amended response on September 9, 2020, this time sending a .cvs "overlay" file containing additional metadata. (ECF 74-15). Nevertheless, Axis alleges that the amended response still allegedly lacked custodian data and contained incorrect family metadata. (*Id.*). American Specialty, however, maintains that there was no alteration to any family data or any other document, and that all emails were produced as they were stored in its source files. (ECF 83 at 5).

On September 29, 2020, American Specialty responded to Axis's second Rule 26 letter, asserting American Specialty had provided proper written objections to Axis's RFPs; that the September 9, 2020, .cvs file sufficiently responded to Axis's metadata requests; that American Specialty has in fact provided the allegedly "missing" documents; and that Brown & Brown has provided all responsive, nonprivileged documents and communications. (ECF 74-17). Two days later, upon American Specialty's request (ECF 63), the Court conducted a telephonic

hearing regarding the parties' discovery disputes where it encouraged the parties to work together to resolve the disputes, but to file a motion to compel if needed (ECF 65).

The parties continued to communicate regarding the disputes, with Axis maintaining that American Specialty had failed to produce certain responsive documents and that American Specialty refused to provide the Bates ranges of the supposedly responsive documents. (ECF 73 at 8). On January 8, 2021, American Specialty produced an additional forty-four documents—including "Excess Claim notes" or a "Claims Diary"—which Axis claims should have been produced in the first production, underscoring its claim that American Axis failed to produce all responsive documents. (ECF 73 at 9; ECF 75-1 at 4-5). Further, Axis alleges that its deposition of American Specialty employees confirmed that American Specialty maintained certain records that are responsive to Axis's RFPs that American Specialty failed to produce. (ECF 77 at 9-10; ECF 75-8). Following additional attempts to confer with American Specialty's counsel, Axis filed the present motion seeking an order compelling (i) American Specialty to produce all missing documents; (ii) Brown & Brown to fully respond to the Subpoena; (iii) American Specialty to correct all metadata issues; and (iv) both American Specialty and Brown & Brown to pay the expenses Axis incurred in pursuing this motion. (ECF 73 at 12).

## II. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ......." The Court has "broad discretion in matters relating to discovery." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Further, relevance for purposes of discovery is construed broadly as "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206

F.R.D. 615, 619 (S.D. Ind. 2002). Moreover there "is a strong public policy in favor of disclosure of relevant materials . . . ." *Patterson*, 281 F.3d at 681 (citing Fed. R. Civ. P. 26(b)(2)). However, "relevance alone does not translate into automatic discoverability ......... An assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Rule 26(b)(1) instructs the Court to determine proportionality, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Pursuant to Federal Rule of Civil Procedure 34, a party may serve another with a request to produce or permit the party to inspect a document or thing "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Such requests must be within the scope of discovery permitted by Federal Rule 26(b), that is, it must be relevant to a party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b), 34(a). The responding party may object to a request that it believes is improper pursuant to Federal Rule 34(b)(2)(C).

Under Federal Rule of Civil Procedure 37, a party is permitted to file a motion to compel discovery where another party fails to respond to discovery requests. Fed. R. Civ. P. 37(c); *see also Redmond v. Leatherwood*, No. 06-C-1242, 2009 WL 212974, at *1 (E.D. Wis. Jan. 29, 2009). "A motion to compel discovery pursuant to Rule 37(a) is addressed to the sound discretion of the trial court." *Redmond*, 2009 WL 212974, at *1 (citation omitted). While a discovery request is entitled to "broad and liberal treatment," *Goldman v. Checker Taxi Co.*, 325 F.2d 853, 855 (7th Cir. 1963), a discovery request, "like all matters of procedure, has ultimate

and necessary boundaries," *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The moving party

generally bears the burden of proving that the discovery it seeks is relevant to the case. *See*

*United States v. Lake Cnty. Bd. of Comm'rs*, No. 2:04 CV 415, 2006 WL 978882, at *1 (N.D.

Ind. Apr. 7, 2006) (citations omitted). Conversely, "[t]he party opposing discovery has the

burden of proving that the requested discovery should be disallowed." *Bd. of Trs. of the Univ. of*

*Ill. v. Micron Tech., Inc.*, No. 211-cv-02288-SLD-JEH, 2016 WL 4132182, at *3 (C.D. Ill. Aug.

3, 2016) (collecting cases); *see also Todd v. Ocwen Loan Servicing, Inc.*, No. 2:19-cv-00085-

JMS-DLP, 2020 WL 1328640, at *5 (S.D. Ind. Jan. 30, 2020) ("[T]he burden remains on [the

Defendant] to support its objection that the Plaintiff's request is not proportional to the needs of

this case.").

**III.**                                                    **Analysis**

A.  Missing Documents, RFPs 1-4

Axis contends that American Specialty has failed to produce a variety of documents,

including:

> documents and communications that American Specialty and
> Brown & Brown exchanged internally and with third parties that
> relate to the GL Policy, the Excess Policy, Tynes, and the Tynes
> Claim, including the underwriting file that American Specialty
> maintained for the GL and Excess Policies ("Underwriting File"),
> and the claim files related to the Tynes Claim under those policies
> ("GL Claim File" and "Excess Claim File").

(ECF 73 at 2). Axis maintains that such documents are responsive to RFPs 1 and 3, and possibly

RFPs 2 and 4,[3] and that its contract with American Specialty required that American Specialty

---

[3] Axis' RFPs 1-4 are as follows:

> **Request No. 1.**    All Documents and Communications, including any claim file and claim diary, regarding
> Tynes, the Tynes Claim, the Tynes Lawsuit, or the Tynes Settlement.

maintain these documents for Axis's benefit. (*Id.* at 13, 13 ns. 8-9). In support of its argument, Axis points to "Excess Claim notes" produced by American Specialty with an entry referencing a "primary claim file," presumably the GL policy file sought by Axis. (*Id.* at 14; ECF 75-8).

American Specialty in turn asserts that it has already produced all responsive documents, and in any event, Axis had unfettered access to documents like the Tynes Claim diary/adjuster notes.[4] (ECF 83 at 9-10). American Specialty, in fact, emphasizes that "Axis fails to plainly state that [it] in fact [does] not have access to the documents." (*Id.* at 11). As such, American Specialty claims that Axis's motion should be denied because the discovery is duplicative and overly burdensome. (*Id.* at 12); *see* Fed. R. Civ. P. 26(b)(2)(C)(i).

Problematically, though, American Specialty failed to object to the RFPs on the grounds that they were overly burdensome or duplicative; nor did they initially assert that Axis already had access to the documents. (*See* ECF 74-2 at 3-4). As to each request, American Specialty raised a variety of general objections—objecting to the requests to the extent they seek documents in a metadata or a specified file format, documents protected by attorney-client privilege and work-product doctrine, confidential or privileged third party material, confidential

---

**Request No. 2.**   All Documents, Communications, or other evidence given to or received from any Person preliminary to, or in the course of, any investigation of any Communication to, from, or with you or AXIS that regards the Tynes Claim, the Tynes Lawsuit, or the Tynes Settlement.

**Request No. 3.**   All Documents and Communications, including all business records, Communications with policyholders, brokers, and AXIS, underwriting files, and analysis and decision-making on underwriting considerations, regarding the GL Policy or the Excess Policy.

**Request No. 4.**   All Documents, Communications, or other evidence given to or received from any Person preliminary to, or in the course of, any investigation of any Communication to, from, or with you or AXIS that regards to the GL Policy or the Excess Policy.

(ECF 74-1 at 45).

[4] The parties appear to use different terminology to describe the same documents. For example, American Specialty's counsel is unsure if there was any document referred to as a "claims diary." (*See* ECF 74-10 at 5). In its response, American Specialty claims that what Axis was seeking are "adjustor notes." (ECF 83 at 9). In any event, the parties appear to be in agreement as to what the actual file or documents are. For the sake of consistency, the Court will refer to the document/file as the "claims diary."

or proprietary information, and impose requirements beyond those articulated in the Federal or Local Rules. (ECF 74-2 at 2-3). As to RFPs 1 and 3, American Specialty merely reiterated its attorney-client/work-product objections, but otherwise responded that it would "produce responsive, non-privileged documents and communications within its possession, custody, or control." (*Id.* at 3). As to RFPs 2 and 4, American Specialty again objected to the production of privileged material and alleged that the requests were "unclear and confusing," but otherwise agreed to produce responsive documents. (*Id.* at 3-4).

American Specialty cannot now raise arguments in its response brief that it did not advance in its initial objections. To reiterate, Federal Rule of Civil Procedure 34 requires that a party objecting to a request for production within thirty days of being served must "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(A)-(B). "The burden rests upon the objecting party to show why a particular discovery request is improper." *McGrath v. Everest Nat'l Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008) (citation and internal quotation marks omitted). "Failure to timely assert objections to discovery requests may result in a waiver of all objections that could have been seasonably asserted." *Autotech Techs. Ltd. P'ship v. Automationdirect.Com, Inc.*, 236 F.R.D. 396, 398 (N.D. Ill. 2006) (collecting cases); *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 366 (N.D. Ill. 2005) ("Here, as plaintiffs point out in their reply brief, the Noranda defendants raise their 'cumulative and duplicative' objection for the first time in their Response [to a motion to compel]. The objection is thus waived.").

In any event, it is not clear that such discovery would be duplicative or overly burdensome. While the parties appear to agree that the supposedly missing documents were prepared and maintained by American Specialty for Axis by virtue of their contract, this is not

necessarily dispositive. It "is no objection to discovery that the moving party may already have knowledge of the matters inquired into. This is true also of discovery of documents and other things under Rule 34." *Burton Mech. Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 236 (N.D. Ind. 1992) (quoting 4A J. Moore, J. Lucas, *Moore's Federal Practice* ¶ 34.12 (2d ed. 1991)); *see also In re Allergan, Inc*, No. 14-cv-02004-DOC (KES), 2016 WL 5922717, at *9 (C.D. Cal. Sept. 23, 2016) ("[G]enerally, a party may not object to discovery on the basis that the requesting party already possesses the documents or information sought.").

Of course, American Specialty is not just claiming that Axis has prior knowledge of the information contained in the "Missing Documents," but that Axis had access to the documents independent of discovery. But American Specialty's claim that Axis had "unfettered access" to the documents it now seeks is undercut by a letter sent by American Specialty's counsel to Axis's counsel in response to an informal request that American Specialty forward Axis a copy of the "Tynes v. Bucs File." (ECF 90-2). The October 2, 2019, letter—sent more than a month before American Specialty responded to Axis's discovery requests (ECF 74-2 at 22)—asked "Axis to cease and desist further efforts to obtain documents or other evidence from American Specialty," in part because Axis filed the present lawsuit and "discovery [was] commencing" (ECF 90-2). American Specialty cannot now have it both ways. It cannot refuse to turn over documents in the discovery process claiming Axis had alternative means of accessing the documents, and at the same time refuse to forward documents that were created and maintained per its contract with Axis because discovery had commenced. *Compare Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004) (denying a motion to compel in part because the requesting party had access to the storage facility containing the allegedly responsive documents).

Accordingly, Axis' motion to compel (ECF 72) as to the "Missing Documents" from RFPs 1-4 is GRANTED. American Specialty is ORDERED to produce all responsive, non-privileged documents. To the extent that American Specialty has already produced the responsive documents, it is ordered to provide Axis with the relevant Bates ranges of the responsive documents. Further, American Specialty is ORDERED to file an affidavit, signed by its counsel or qualified representative, detailing the steps it took to identify the responsive documents and certifying that all responsive, non-privileged documents have been produced. To the extent that American Specialty continues to withhold documents on the grounds of privilege, it is ordered to produce a privilege log. Any such privilege log must—for *each* document (or communication) withheld—contain: (a) a brief summary or description of the content of the document; (b) the date the document or was prepared; (c) the names and titles of the persons who prepared the document; (d) the names and titles of the persons to whom the document was directed, or for whom it was prepared; (e) the purpose for preparing the document; (f) the privilege or privileges asserted for the document; and (g) how the document or communication satisfies the asserted privileges. *See, e.g.*, *Langford v. City of Elkhart*, Nos. S91-322(AS), S91-323(AS), S91-571(AS), 1992 WL 404443, at *5 (N.D. Ind. Apr. 21, 1992).

B.  Missing Communications, RFPs 10-11, 26-28, 30-32

Axis next contends that American Specialty wrongfully refused to produce documents responsive to two categories of RFPs. As Axis explains, in its RFPs 10 and 11, it requested all documents and communications "to, from, or between [American Specialty] or [Axis]" regarding the parties' dispute. (ECF 73 at 15; ECF 74-1 at 6). In RFPs 26-28 and 30-32, Axis requested "[a]ll Documents and Communications substantiating or supporting" American Specialty's denial of claims in Axis's second amended complaint. (ECF 73 at 16; ECF 74-1 at 10-12).

American Specialty in response to the RFPs raised the same general objections discussed *infra*. Specifically as to RFPs 10 and 11, American Specialty objected on the grounds that the requests were overbroad, sought documents protected by the attorney-client privilege and work-product doctrine, and was not limited to communications between American Specialty and Axis, but otherwise agreed to produce responsive, non-privileged documents. (ECF 74-2 at 8-9). As to RFP 26, American Specialty objected on the grounds that the requested documents were not relevant and were protected by the attorney-client privilege and work-product doctrine.[5] (ECF 74-2 at 15). As to RFPs 27-28 and 30-32, American Specialty objected only on the grounds of attorney-client privilege and work-product doctrine. (*Id*. at 15-18). As to each request, American Specialty only agreed to produce responsive communications between itself and Axis or its broker, Marsh USA ("Marsh"). (*Id.* at 8-9, 15-18). As such, Axis is seeking to compel American Specialty to produce all responsive, non-identical, internal, and third-party communications. (ECF 73 at 16).

While American Specialty initially asserted that it did not interpret Axis's request as including internal communication (ECF 74-19), it has since produced some internal and third-party communications (*see generally* ECF 74-13; ECF 83 at 12). Axis, however, asserts that American Specialty has omitted documents, including internal emails. In support of this contention, Axis points to instances in which emails are allegedly missing and instances in which American Specialty employees edited email subjects before forwarding them. (*See* ECF 73 at 16 (citing ECF 74-19)). Further, Axis claims there are reasons to believe that American Specialty is

---

[5] More specifically, in RFP 26, Axis requested "All Documents and Communications substantiating or supporting your denial in paragraph 61 of the Answer of AXIS's allegation that 'Marsh also explained in the email to [you] that K&K, the representative that had written the expiring policies, had decided to place a concussion exclusion on the [Buccaneers'] policies at renewal.'" (ECF 74-1 at 10). American Specialty contends this request seeks irrelevant information because the claim at the heart of this litigation, "[t]he Tynes Claim, as defined by Axis, does not deal with injuries sustained from a concussion." (ECF 74-2 at 15).

withholding additional responsive documents—for example, American Specialty only produced two internal communications regarding the GL Policy, Excess Policy, or Tynes Claim during the relevant time period. (ECF 73 at 19; ECF 74-5 at 4-5). Axis, for its part, points to multiple emails and email threads that reference earlier emails and attachments which apparently were not produced. (ECF 74-20 at 3-4). Still more, Axis identifies certain emails that appear to have had their subjects or text edited. For example, Axis identifies two copies of the same email from an Axis employee to an American Specialty employee with different subject lines, contending that the subject line was either changed when the email was forwarded and American Specialty failed to produce any other emails in the chain, or its metadata was altered at some later point. (ECF 90 at 14 (citing ECF 75-11 and 75-12)).

American Specialty in response asserts while it "did not unnecessarily produce duplicates of responsive documents," it has produced all responsive documents it identified. (ECF 83 at 17-19; *see* ECF 83 at 19 ("There is simply nothing further to compel.")). American Specialty also contends that any edits to subject lines or text was simply the result of employees forwarding or responding to the emails. Further, it asserts it has only saved certain threads and not each individual email, and thus emails with edited texts or subjects are the only responsive documents in its possession. (ECF 83 at 17 ("For example, after a reasonable and diligent search, American Specialty only saved a copy of the May 9, 2013 email from Jennifer Rowe at Marsh that was forwarded on by Doug Sundquist and that email was produced.")).

Federal Rule of Civil Procedure 34(b)(2)(E) provides that a responding party "must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request," or if the requesting party "does not specify a form for producing electronically stored information, . . . in a form or forms in which it is

ordinarily maintained or in a reasonably usable form or forms . . . ." Fed. R. Civ. P. 34(b)(2)(E)(i)-(ii). In general, though, "[i]t is sufficient that the discovered party respond by saying that a document . . . is not in existence." *Hagemeyer*, 222 F.R.D. at 598 (quoting 8A Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2213 (2d ed. 1994)). "In the face of a denial by a party that it has possession, custody or control of documents, the [requesting] party must make an adequate showing to overcome this assertion." *Id*. (alteration in original) (quoting *Bank of N.Y. v. Meridien BIAO Bank of Tanz. Ltd.*, 171 F.R.D. 135, 147 (S.D.N.Y. 1997)). Further, while "[r]ecords kept in the ordinary course of the business of a party are presumed to exist ........[t]he Court does not presume that all e-mails are kept in the regular course of business." *Id*. (citations omitted); *see also Kay Beer Distrib., Inc. v. Energy Brands, Inc.*, No. 07-C-1068, 2009 WL 1649592, at *4 (E.D. Wis. June 10, 2009) ("Not every email or other electronically stored document that bears some variation of Kay Beer's name is relevant or is reasonably calculated to lead to the discovery of relevant evidence.").

That being said, "the producing party has the obligation to search available electronic systems for the information demanded." *Peskoff v. Faber*, 240 F.R.D. 26, 31 (D.D.C. 2007). If electronically stored information is "not reasonably accessible because of undue burden or cost," Fed. R. Civ. 26(b)(2)(B), it is the responding party's burden to identify and articulate the burden, *see Peskoff*, 240 F.R.D. at 31. The Court though, can still order the production of inaccessible electronically stored information upon a showing of good cause. Fed. R. Civ. P. 26(b)(2)(C). As the advisory notes to the 2006 amendment to Rule 26(b)(2) make clear, this requires the responding party to provide sufficient information to allow the requesting party, and the Court, to evaluate such a claim.

> The responding party must also identify, by category or type, the
> sources containing potentially responsive information that it is

> neither searching nor producing. The identification should, to the extent possible, provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources.

Fed. R. Civ. 26(b)(2), advisory committee notes to 2006 amendment.

Here, the inconsistencies in American Specialty's production raises questions as to what emails and documents it maintained in the regular course of business. Further, neither American Specialty's responses nor the multiple emails sent between the parties' counsel in support of their respective briefs provide enough information for the Court to determine whether American Specialty has satisfied its discovery responsibilities. (*See* ECF 73 at 19; ECF 74-4 at 2-5; ECF 74-17 (letter from American Specialty's counsel merely stating that "American Specialty has conducted a reasonable search for documents responsive to Axis's request for production and produced documents as they were ordinarily maintained."); ECF 84-1 at 4). Despite American Specialty's claims, it is not clear what "reasonable" and "diligent" steps it took to identify those emails and communications, or why certain inclusive emails were saved but not the earlier individual emails and attachments.

This and the apparent paucity of responsive communications raises legitimate concerns as to whether American Specialty's research methodology was broad enough to encompass all responsive documents. *See Stage v. Restoration Hardware, Inc.*, No. 2:14-CV-077, 2015 WL 631113, at *1 (S.D. Ohio Feb. 12, 2015) ("However, it is not clear from the record what the expanded search entailed, and the record contains examples of apparently incomplete document production which required Ms. Stage to ask Defendants to locate complete versions of documents or documents that should have been produced but were absent. This raises a legitimate concern about the thoroughness of Defendants' research methodology."); *see also DR*

*Distribs., LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324, 2021 WL 185082, at *73 (N.D. Ill. Jan. 19, 2021) ("Rule 26(g) requires counsel to make a careful inquiry. ...... Blind reliance on a client's representation is rarely a reasonable inquiry." (internal citations and quotation marks omitted)).

Accordingly, Axis's motion to compel (ECF 72) as to RFPs 10-11, 26-28, and 30-32 will be GRANTED IN PART. To the extent that American Specialty does not have responsive communications within its custody, possession or control, such documents would obviously be outside of the scope of Federal Rule 34.[6] American Specialty, however, must "conduct a search of all depositories of electronic information in which one may reasonably expect to find" responsive documents—including internal and external communications. *Peskoff*, 240 F.R.D. at 31. After such a search, American Specialty is again ORDERED to file an affidavit, signed by its counsel or a qualified representative, detailing the steps it took to identify the responsive documents and certifying that all responsive, non-privileged documents have been produced. The affidavit should explain "how the search was conducted, of which electronic depositories, and how it was designed to produce and did in fact produce all" responsive communications. *Id.* If American Specialty continues to withhold documents as privileged or work product, this should be reflected in the privilege log as already described *supra*.

---

[6] Further, American Specialty has also repeatedly asserted to Axis's counsel that it did not produce internal communications because it did not believe internal communications are responsive to Axis' requests. (*See, e.g.,* ECF 74-19 at 2-3 ("As for responses to Request Nos. 26-27, I am unclear as to how these requests seek internal communications. The requests seek documents and communications substantiating or supporting American Specialty's denial of certain allegations in the complaint [involving American Specialty's interactions with Marsh]. In order to substantiate or support those denials, American Specialty would necessarily have to provide documents and communications from Marsh, which it has. Accordingly, I do not see how a further amendment to these responses would provide any additional information.")). If, upon further review, American Specialty maintains that no internal communications are responsive to the requests, it need not produce them. American Specialty is WARNED however, that improperly failing to produce responsive documents may result in sanctions. *See* Fed. R. Civ. P. 37.

As mentioned, Axis also contends that American Specialty improperly failed to include metadata requested in conjunction with its RFPs. In its RFPs, Axis requested that responsive documents be produced as:

> Bates numbered TIFF (or, if not possible, in .PDF) images with a metadata load file, organized by family (to the extent possible) with the following metadata fields: BegDoc, EndDoc, BegAttach, EndAttach, FileName, Title, Author, CreateDate, CreateTime, LastModDate, LastModTime, SentDate, SentTime, RecdDate, RecdTime, From, To, CC, BCC, Em_Subject, FileSize, FilePath, FileType, NativeFilePath, and Custodian, unless otherwise agreed to by the parties or ordered by the Court.

(ECF 74-1 at 3). American Specialty initially objected to the requested metadata fields, stating that the parties had not agreed to an ESI protocol and agreeing only to produce responsive documents as PDFs. (ECF 74-2 at 1). American Specialty then later produced the .cvs overlay with its supplemental responses including twenty separate data fields, including "'to,' 'from,' 'cc', and 'bcc' author fields . . . ." (ECF 83 at 5; *see* ECF 84 ¶ 9 ("American Specialty provided amended objections and responses to Axis' Requests to address the bulk of Axis's alleged issues."); ECF 85 ¶ 9).

Despite the .cvs overlay, Axis alleges that American Specialty:

- Omitted basic metadata, like custodian information, that precludes AXIS from connecting the ESI American Specialty produced to its custodian (*e.g.*, owner);

- Produced its ESI with errant (or altered) family metadata, which (a) links documents as related (for example, as a parent email and children attachments) when those documents are, in fact, unrelated, and (b) fails to link documents that are, in fact, related, precluding AXIS from connecting parent emails and their children attachments; and

- Produced documents that appear to have been modified from their original form without any explanation or metadata that would allow AXIS to ascertain information regarding the modifications.

(ECF 73 at 22-23 (internal footnote omitted)). In support of its first assertion, Axis submits a scanned letter which was identified as a "parent" document of supposedly fifteen "children" documents. (*Id.* at 23 n. 13; *see* ECF 75-10). As to its second assertion, Axis points to two emails produced with the same content, sender, recipients, and time stamp, but different subject lines. (ECF 73 at 23 n. 13; *see* ECF 74-5 at 3-4). Axis also asserts that it had conferred with members of American Specialty's technology team—who allegedly agreed that there were metadata issues present in American Specialty's production and agreed to investigate them. (ECF 73 at 23; *see* ECF 74-10 at 4-5).

For its part, American Specialty contests that its technology team agreed to anything besides what was included in the .cvs overlay. (ECF 83 at 5 n.5; ECF 85 at 6). It primarily defends against Axis's claims by stating that the parties had not agreed to an established ESI protocol approved by the Court. (ECF 83 at 19). American Specialty further asserts that it has produced all documents in the format they were maintained in the ordinary course of business, satisfying its discovery duty, and in any event, that Axis has failed to show any particular need for the ESI. (*Id.* at 19-20).

American Specialty couches its argument in terms of Rule 34(b)(2)(D), contending that it was "perfectly within its rights to object . . . to the ESI production format requests." (EFC 83 at 19); *see* Fed. R. Civ. P. 34(b)(2)(D) ("If the responding party objects to a requested form--or if no form was specified in the request--the party must state the form or forms it intends to use."). In doing so, American Specialty seemingly forgets Rule 34(b)(2)(C)'s requirement that the responding party must state the "basis of that objection." The only basis American Specialty offered in its response was a lack of agreed upon ESI protocol. (ECF 74-2 at 2). "Rule 34(b) [though,] permits the requesting party to designate the form or forms in which it wants

electronically stored information produced." Fed. R. Civ. P. 34, advisory committee notes to 2006 amendment; *see* Fed. R. Civ. 34(b)(1)(C). While parties are often encouraged to work together to reach an agreed upon ESI or metadata protocol, it is not required by the text of Rule 34. *See Melian Labs Inc. v. Triology LLC*, No. 13-cv-04791-SBA (KAW), 2014 WL 4386439, at *2 (N.D. Cal. Sept. 4, 2014) (noting that the parties' stipulation as to ESI superseded Rule 34's default rules).

Indeed, the fact that Axis specifically requested the metadata at issue cannot be overstated. As *Pace v. International Mill Service, Inc.*—which American Specialty cited in support of its argument (ECF 83 at 20)—makes clear, "the conformity of a responding party's production of electronic files to the rule must be gauged on a case-by-case basis, according to the *specific terms of the request*." No. 205 CV 69, 2007 WL 1385385, at *2 (N.D. Ind. May 7, 2007) (emphasis added). This is not an instance in which the requesting party did not specifically request metadata only to later complain of its absence. *Compare Perfect Barrier LLC v. Woodsmart Sols. Inc.*, No. 3:07-CV-103 JVB, 2008 WL 2230192, at *3 (N.D. Ind. May 27, 2008) ("Perfect Barrier did not request that the emails be produced in a particular form, yet Perfect Barrier now asks this Court to force Woodsmart to produce the electronic emails as Static Images with a bates-number identifier."); *N. Crossarm Co. v. Chem. Specialties, Inc.*, No. 03-C-415-C, 2004 WL 635606, at *2 (W.D. Wis. Mar. 3, 2004) ("First, plaintiff did not specifically request production of the e-mail in electronic format, it simply asked for production of "documents," adopting the definition in Rule 34(a). This certainly entitled plaintiff to disclosure of information stored electronically, but it did not require production in electronic format."). Once Axis made its request for metadata, American Specialty was not free to simply ignore it. *See Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*, No. 2:11-CV-3471 KJM AC,

2017 WL 445722, at *5 (E.D. Cal. Feb. 2, 2017) ("CDE argues that even though plaintiffs specifically requested production in native format with metadata attached, CDE can ignore that request and produce it in some other format so long as the production is in a usable form, e.g., electronically searchable and paired with essential metadata....... This argument also, is directly contrary to the text of the discovery rules." (quotation marks and internal citation omitted)).

While not raised in its initial response to the RFPs, American Specialty also suggests that Axis's requests should be disallowed on relevancy grounds. (ECF 83 at 22). As already mentioned, though, if a party fails to raise an objection in a timely manner, that objection is waived. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 366 ("Noranda defendants raise their 'cumulative and duplicative' objection for the first time in their Response. The objection is thus waived."). Further, relevancy in the discovery context is broad—encompassing "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Chavez,* 206 F.R.D. at 619. Here, the requested metadata likely would have helped lead Axis to material with a bearing on this case. As Axis explains, American Specialty produced documents which were initially attachments to emails, without any family metadata, making it difficult for Axis to match the documents to their parent emails. (ECF 90 at 11-12). Further, internal communications and documents, and when they were created or modified, would certainly seem relevant to Axis's claim that American Specialty breached the parties' contract, in part, by "failing to maintain complete and accurate paperwork relating to the policies issued to the [Buccaneers]," which American Specialty has denied. (ECF 31 ¶ 136). Still more, it is not clear if or how producing the requested additional metadata would be unduly burdensome or disproportionate to the needs of the case. Indeed, American Specialty has already

admitted that its counsel maintains an in-house litigation laboratory and utilizes a Relativity[7] database for storing, searching, labeling, and organizing potentially responsive documents and their metadata. (ECF 85). In any event, "[i]f relevance is in doubt, courts should err on the side of permissive discovery." *Wiginton v. CB Richard Ellis, Inc.,* 229 F.R.D. 568, 577 (N.D. Ill. 2004).

In summary, American Specialty was not permitted to refuse production of metadata solely on the grounds that the parties had yet to mutually agree to the ESI production protocol. Accordingly, American Specialty was required to produce metadata as a requested by Axis. Accordingly, Axis's motion to compel (ECF 72) is GRANTED as to its requests for ESI metadata. To the extent American Specialty has not already produced this, American Specialty is ORDERED to provide Axis with the metadata of its responsive documents as requested in Axis's initial RFPs. Again, American Specialty is ORDERED to file an affidavit, signed by its counsel or a qualified representative, detailing the steps taken by American Specialty to ensure that the metadata was produced as it was maintained in the ordinary course of business, and that it was not purposefully altered. If any metadata was altered, American Specialty's counsel or qualified representative should explain how and why the data was altered.

### D. Brown & Brown Subpoena

Axis also served American Specialty's parent company, Brown & Brown, with a subpoena duces tecum on May 21, 2020, pursuant to Federal Rule of Civil Procedure 45, seeking eleven RFPs for "[a]ll Documents, ESI, and Communications" regarding a variety of topics

---

[7] "Relativity is a standard document management service that allows attorneys to organize, manage and review documents electronically in connection with litigation." *Massuda v. Panda Express, Inc.*, No. 12 CV 9683, 2014 WL 148723, at *4 (N.D. Ill. Jan. 15, 2014) (quotation marks omitted).

including the GL Policy and Excess Policy.[8] (ECF 74-6). The Subpoena, however, was served to Brown & Brown's office in Indianapolis, Indiana, and similarly commands Brown & Brown to produce the requested documents at Axis's counsel's office in Indianapolis. (*Id.* at 2).

Federal Rule of Civil Procedure 45(d)(2)(B)(i), provides that "[a]t any time . . . the serving party may move the court for the district where compliance is required for an order compelling production or inspection." "The definition of the phrase 'where compliance is required' is unclear." *Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017 WL 2462823, at *2 (C.D. Ill. July 7, 2017) (collecting cases). "Some courts have suggested that compliance is required where the subpoenaed person resides. Other courts have held that the place of delivery determines the place of compliance." *Ello v. Brinton*, No. 2:14-CV-299-TLS-JEM, 2017 WL 56316, at *5 (N.D. Ind. Jan. 5, 2017) (internal citations omitted). When a motion to quash a subpoena or a motion to compel compliance with a subpoena "is filed in a court other than the court where compliance is required, that court lacks jurisdiction to resolve the motion." *Id.* (quoting *Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-CV-0708, 2014 WL 4079555, at *3 (D. Nev. Aug. 15, 2014)); *see also Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 10 (D.D.C. 2012) ("Deciding the instant motion to compel by Plaintiff is the functional equivalent of deciding a motion to quash by Comcast.").

Here, given the location of Brown & Brown's office and Axis's counsel's office, under either interpretation of Rule 45's language, the district where compliance is required is the Southern District of Indiana. Accordingly, this Court does not have jurisdiction to rule on Axis's

---

[8] ESI is an abbreviation of electronically stored information or "[d]ata created, manipulated, communicated, stored, and best used in digital form using computers." Electronically Stored Information, *Black's Law Dictionary* (11th ed. 2019).

motion to compel (ECF 72) as it relates to the Subpoena. *See Ello*, 2017 WL 56316 at * 6.

Accordingly, Axis's motion to compel (ECF 72) as it relates to the Subpoena is DENIED.

E. Axis's Fee Request

Finally, Axis requests that it be awarded its reasonable fees and costs incurred pursuing

this motion. (ECF 73 at 25). American Specialty contends that an award of fees is inappropriate

because its objections and positions in opposition are "substantially justified." (ECF 83 at 24-

26).

Rule 37 presumptively requires the loser "to make good the victor's costs." *Rackemann

v. LISNR, Inc.*, No. 1:17-cv-00624-MJD-TWP, 2018 WL 3328140, at *2 (S.D. Ind. July 6, 2018)

(citation and internal quotation marks omitted); *see also Rodriquez v. Parsons Infrastructure &

Tech. Grp., Inc.*, 271 F.R.D. 620, 623 (S.D. Ind. 2010) (applying Rule 37's fee award analysis to

opposition to a Rule 45 subpoena). "[A] court must, after giving an opportunity to be heard,

require the party or deponent whose conduct necessitated the motion . . . to pay the movant's

reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P.

37(a)(5)(A). The Court, however, will not order the payment of fees if "(i) the movant filed the

motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii)

other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii); *see

also Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, No. 97 C 5696, 1999 WL 446691, at *1

(N.D. Ill. June 23, 1999). "The burden of persuasion is on the losing party to avoid assessment

of expenses and fees, rather than on the winning party [to] obtain such an award." *Lincoln

Diagnostics, Inc. v. Panatrex, Inc.*, No. 07-CV-2077, 2008 WL 4330182, at *3 (C.D. Ill. Sept.

16, 2008) (citation and internal quotation marks omitted). An objection is substantially justified

"if reasonable people could differ as to [the appropriateness of the contested action]....... " *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (alteration in original; internal citations omitted).

Here, there can be little doubt that Axis attempted in good faith to resolve these disputes through multiple emails, letters, and even Court conferences before filing the motion to compel. Axis has prevailed as to the RFPs and metadata, but not as to the Subpoena. Accordingly, the Court must determine whether American Specialty has established that its position *vis-à-vis* the RFPs and metadata were substantially justified or that an award of fees would be unjust.

Ultimately, there is little to suggest that American Specialty's position was substantially justified or that an award of fees would be unjust. As described now at length, American Specialty's objections to the RFPs were largely undeveloped. *See Knauf Insulation, LLC v. Johns Manville Corp.*, No. 115CV00111WTLMJD, 2019 WL 10947458, at *2 (S.D. Ind. Feb. 27, 2019) (finding opposition to motion to compel was not substantially justified in part, because "Knauf makes no attempt to quantify the burden of providing a more detailed response. Undue burden or expense, actual or potential, must be shown by a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." (quotation marks omitted)). Further, American Specialty's argument as to Axis's independent access to the material sought is undercut by its apparent refusal to provide the material outside of discovery. Still more, American Specialty's primary argument regarding metadata—that its objection was appropriate because the Court had yet to enter an ESI protocol—is contradicted by the plain text of Rule 26. Further, American Specialty's production and attempts to resolve matter (for example, by producing the .cvs overlay) do not necessarily justify its position. *See id.* at *3.

American Specialty's position as to the allegedly missing documents would seemingly be justified if it has in fact already produced all responsive documents. *Contra Watkins v. Trans Union, LLC*, No. 2:14-cv-00135-WTL-MJD, 2019 WL 336674, at *2 (S.D. Ind. Jan. 28, 2019) (Defendant's opposition to discovery on the grounds that "no 'documents' exist responsive to Plaintiff's request," was not substantially justified when responsive documents existed), *R&R adopted by*, 2019 WL 653095 (S.D. Ind. Feb. 15, 2019). But as mentioned, Axis has raised legitimate concerns regarding the completeness of American Specialty's production. Accordingly, without more, the Court cannot say that American Specialty's position was substantially justified.

"Having found that an award of fees and expenses is appropriate, the Court must still make a finding that the fees and expenses requested by the Defendant are reasonable." *Grady v. Affiliated Comput. Servs. ACS*, No. 1:13-CV-00342-TWP, 2014 WL 6066049, at *2 (S.D. Ind. Nov. 13, 2014); *see also Priest v. Brummer*, No. 1:06-CV-65, 2007 WL 2904086, at *2 (N.D. Ind. Oct. 3, 2007). Here, though, Axis has not set forth the amount of fees it seeks to recover, or the means used to calculate that amount. *See, e.g., Priest*, 2007 WL 2904086, at *2 ("The Plaintiff, however, does not tell us anything about the copying costs she seeks to have assessed, such as when or why they were incurred, the number of pages copied or the per page charge, and thus we have no way of determining whether the copying expenses are reasonable." (citation omitted)). Accordingly, Axis is directed to file an affidavit detailing the amount of fees it seeks to recover and how it arrived at that amount. Because Axis's motion was unsuccessful as to the Subpoena, however, it will not be awarded fees for any time spent researching or drafting that its arguments as to that specific issue. If after reviewing the Axis's affidavit the Court it is unable

to separate the fees Axis incurred advancing its arguments regarding the Subpoena from its motion practice as a whole, the Court will reduce the award of fees by an appropriate percentage.

## IV.  Conclusion

In summary, Axis's motion to compel (ECF 72) is GRANTED to the extent detailed in this Opinion and Order. As to RFPs 1-4, 10-11, 26-28, and 30-32, American Specialty is ORDERED to PRODUCE to Axis on or before August 2, 2021, all responsive, non-privileged documents and material not previously produced. In addition, American Specialty MUST PRODUCE all requested metadata to the extent provided for in this Order. Further, American Specialty MUST FILE on or before August 21, 2021, an affidavit or affidavits signed by its counsel or qualified representative (1) detailing its search for, and collection of, responsive material, and (2) certifying that any all metadata was produced as maintained in the ordinary course of business and that it was not altered, or—if it was altered—the reason for any alterations. In the event any documents are withheld on the grounds of attorney-client privilege or work-product doctrine, American Specialty must produce a privilege log containing: (a) a brief summary or description of the content of the document; (b) the date the document or was prepared; (c) the names and titles of the persons who prepared the document; (d) the names and titles of the persons to whom the document was directed, or for whom it was prepared; (e) the purpose for preparing the document; (f) the privilege or privileges asserted for the document; and (g) how the document or communication satisfies the asserted privileges.

As to the Subpoena, Axis's motion to compel (ECF 72) is DENIED without prejudice. Because the Subpoena does not require compliance in the Northern District of Indiana, this is not the proper forum for resolving this dispute. By application of Federal Rule 45, any motion

seeking to compel compliance with a third-party subpoena duces tecum must be brought in the district where compliance with that subpoena is required.

Finally, Axis's fee request is provisionally GRANTED as it relates to the RFPs and Metadata, but DENIED as it relates to the Subpoena. Axis is afforded to and including August 2, 2021, to file an affidavit detailing its fee calculation.

SO ORDERED.

Entered this 12th of July 2021.

/s/ Susan Collins   
Susan Collins
United States Magistrate Judge