UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AXIS INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN SPECIALTY INSURANCE & RISK SERVICES, INC., <br><br> Defendant. | CAUSE NO. 1:19-CV-165 DRL |

OPINION AND ORDER

In 2015, Tampa Bay Buccaneers kicker Lawrence Tynes sued the franchise for an off-the-field injury that ended his decorated career. The Buccaneers believed the franchise had insurance coverage based on representations in a proposal from one broker, American Specialty Insurance & Risk Services, Inc. American Specialty served as underwriter for AXIS Insurance Company. But AXIS called an audible and denied coverage. The Tynes suit never progressed to name American Specialty or AXIS.

Instead, as the suit proceeded against the Buccaneers, rather than ask American Specialty to defend even a potential claim, AXIS directed American Specialty to stay out of it, and did so for eighteen months. AXIS maintained its position that it wasn't actually liable because the insurance policy provided no coverage. At mediation, AXIS nevertheless chose to attend and contribute to a Buccaneers settlement in exchange for the franchise's promise not to sue AXIS. AXIS had invited American Specialty to consider a "market solution" at mediation too but never asked for a defense.

American Specialty's silence and lack of contribution at mediation kicked off AXIS's suit based on an indemnity clause in their Program Manager Agreement. This case presents the question whether AXIS paid a loss for which it was not liable or in a manner that rendered its settlement contribution voluntary such as to foreclose a request for indemnity. American Specialty requests summary judgment for this reason. The court grants summary judgment accordingly.

BACKGROUND

On February 1, 2008, American Specialty and AXIS entered into a Program Manager Agreement (PMA) [ECF 235-1]. This contract governed American Specialty's duties to AXIS, authorizing American Specialty to accept proposals for insurance, negotiate, underwrite, and accept insurance coverages on AXIS's behalf. The PMA included an indemnity provision that required American Specialty to indemnify AXIS for losses stemming from American Specialty's errors or omissions in the performance or breach of duties under the PMA [*id.* § 27.4].

An agent (from Marsh USA) for the Buccaneers contacted American Specialty on May 9, 2013. Seeking an insurance quote, the agent informed American Specialty that one of the items the team sought in its new policy was excess liability coverage. American Specialty knew to view insurance policy proposals for NFL teams as an AXIS referral. The parties debate whether American Specialty's referral ever contemplated excess liability coverage and whether AXIS ever approved such coverage, though the referral never seems to identify its need explicitly.

American Specialty provided an insurance proposal and binder to the Buccaneers on May 28 and June 4, 2013 respectively [ECF 235-3, 235-4]. The proposal and binder listed primary employer's liability coverage as "TBD." The documents never seemed to mention excess employer's liability coverage. The proposal explained that its terms did "not represent contract terms" but the policy would be subject to (though not limited to) "all terms, conditions, and exclusions as noted." By its terms, the binder constituted "temporary evidence of insurance coverage and will be replaced by [a] policy."

On June 6, 2013, American Specialty delivered the AXIS Excess Policy to the Buccaneers [ECF 235-5]. The policy omitted a schedule of primary employer's liability insurance policy, much less contained any excess coverage. In May 2014, the Buccaneers (through its agent) notified American Specialty that excess employer's liability coverage was absent from the policy and requested that it be added, but American Specialty did not notify AXIS at that time.

In July 2013, kicker Lawrence Tynes joined the Buccaneers. He developed a MRSA infection that he claimed originated from the team's facility. On March 2, 2015, Mr. Tynes sent the Buccaneers a draft complaint seeking damages from this injury. On March 5, American Specialty notified AXIS of this claim. On March 24, AXIS denied coverage for the Tynes claim, telling the Buccaneers that AXIS would neither defend nor indemnify the team.

On April 29, 2015, AXIS informed American Specialty that it "had no authority" over the Tynes claim and "should not be involved in the claims handling in any way," including "any discussions, selection of counsel or agreement on cost share" [ECF 235-17]. AXIS reiterated its stance on May 4, 2015, stating that "American Specialty is not to have any role in the directing or managing of the defense of this claim" [ECF 235-13].

Instead, AXIS instructed that "American Specialty's primary obligation is to maintain an administrative file, process expenses, chronicle the file with claim note entries, report as requested, review the reporting completed by defense counsel, and report to AXIS accordingly" [*id.*]. Despite AXIS's directives, AXIS still expected American Specialty to indemnify AXIS "for any consequential damages suffered by AXIS as a result of the underwriting of the AXIS Excess Policy" [*id.*]. American Specialty responded on May 14, claiming that AXIS had approved the excess employer's liability coverage and that the policy should be reformed due to a clerical error [ECF 229-17].

Mr. Tynes sued the Buccaneers in May 2015 in Florida state court. On October 5, 2016, the Buccaneers notified AXIS and American Specialty of an upcoming mediation with Mr. Tynes and "expected" their representatives to attend. AXIS told the Buccaneers that "based on the disclaimer language in both the proposal and the binder, as well as the ultimate lack of excess employer's liability coverage in the policy, there is insufficient evidence to merit reformation of the excess policy, and AXIS hereby declines to do so" [ECF 235-20].

AXIS nonetheless decided to attend the mediation. On November 7, 2016, AXIS reached out to American Specialty about the mediation [ECF 235-14]. AXIS stood by its expectation that American Specialty would "honor fully its commitment to defend and indemnify AXIS from any loss that may result," though seemingly only should a court or jury rule against the insurer [*id.* 3]. AXIS also invited American Specialty to attend the mediation because it may be in American Specialty's interest "to try to accomplish a market solution to resolve this claim" [*id.*]. American Specialty never responded.

AXIS attended the mediation without American Specialty and contributed to a settlement with Mr. Tynes—a self-described "commercial accommodation" and not an admission of liability. In exchange, the Buccaneers agreed not to sue AXIS for any coverage issues underlying the Tynes claim. AXIS then sued American Specialty, seeking indemnification for AXIS's contribution to the settlement.

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary

4

judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

## DISCUSSION

A.   *American Specialty's Summary Judgment Motion.*

The court (sitting in diversity) applies Indiana's choice of law rules. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Ruiz v. Blentech Corp.*, 89 F.3d 320, 323 (7th Cir. 1996). The PMA says Indiana law governs the contract, and both parties agree, so the court will interpret the PMA through its selected lens of Indiana law. *See Great West Cas. Co. v. Robbins*, 833 F.3d 711, 715 (7th Cir. 2016); *see also McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014); *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004).

Contract principles govern this indemnity question, so the court starts there. A contract's interpretation is generally a question of law, *Song v. Iatarola*, 76 N.E.3d 926, 933 (Ind. Ct. App. 2017), controlled by the parties' intent as expressed by clear contractual language, *City of Jeffersonville v. Env't Mgmt. Corp.*, 954 N.E.2d 1000, 1008 (Ind. Ct. App. 2011). "[W]hen the terms of a contract are drafted in clear and unambiguous language, [the court] will apply the plain and ordinary meaning of that language and enforce the contract according to [its] terms." *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012). No one argues that the indemnity provision is ambiguous.

Under the PMA, American Specialty agreed "to defend, indemnify, and hold AXIS harmless from and against all claims, actions, causes of action, liability or loss which result from any negligent or willful acts, errors or omissions of [American Specialty], or its servants and employees in the performance or breach of duties under this Agreement" [ECF 235-1 § 27.4]. After identifying other forms of breach that would trigger indemnification, the PMA defined loss as "all damages, costs, expenses, reasonable attorneys' fees and other legal fees, penalties, fines, direct or consequential damages, assessments, verdicts (including punitive damages to the extent permissible by law) and any other expense or expenditure incurred by AXIS" [*id.*]. AXIS had a duty to notify American Specialty "[u]pon the assertion by any third

5

party of any claim that may give rise to liability for which the [American Specialty] may have an obligation to indemnify [AXIS]" [*id.* § 27.6].

American Specialty argues that (regardless of whether it breached the PMA) the indemnity clause doesn't apply because AXIS voluntarily contributed to the Tynes settlement. That is, American Specialty contends that AXIS was under no legal obligation to contribute to the settlement because no claim was pending against AXIS and the insurer had no liability. American Specialty also asserts that AXIS needed to give American Specialty an opportunity to defend before settling.

AXIS counters that American Specialty denied liability on the contract, allowing AXIS to settle without consulting American Specialty. AXIS concedes that the Buccaneers never asserted a formal claim against AXIS, so AXIS never was in a position to tender a formal claim to American Specialty. AXIS nevertheless points to the player's claim against the Buccaneers, arguing that the PMA requires indemnity for "*all* claims, liabilities, and losses resulting from [American Specialty's] negligent or willful acts, errors, or omissions." AXIS says American Specialty's actions created a risk of a claim or liability to the Buccaneers, so AXIS contributed to the settlement to eliminate this risk.[1] AXIS also argues that it was not required to give American Specialty an opportunity to defend before settling.

Although Indiana law generally enforces indemnity clauses within the guise of the freedom to contract, "indemnity does not cover losses for which the indemnitee is not liable, but which he voluntarily pays." *Progressive Constr. & Eng'g Co. v. Ind. & Mich. Elec. Co.*, 533 N.E.2d 1279, 1287 (Ind. Ct. App. 1989); *Sink & Edwards, Inc. v. Huber, Hunt, & Nichols, Inc.*, 458 N.E.2d 291, 297 (Ind. Ct. App. 1984). Merely that

---

[1] The parties at times question whether there was a "claim," though the parties seem to recognize that an anticipated "claim" existed, and certainly that potential "liability" existed—both of which the indemnity provision would plainly cover. *See also Indianapolis-Marion Cnty. Pub. Libr. v. Charlier Clark & Linard, PC*, 929 N.E.2d 838, 849 n.9 (Ind. Ct. App. 2010) (if the agreement protects against "liability," indemnity perfects when that liability has become fixed, including when indemnitee "tenders payment in settlement of the underlying claim"). Section 27.6 of the PMA required notice of any claim that "may" give rise to liability.

6

an indemnitee (AXIS) has decided not to face a judgment isn't alone a basis for saying the settlement was a voluntary payment.[2]

"An indemnitor who denies liability on an indemnity contract confers on the indemnitee the right to exercise reasonable judgment in settling the case without further consultation with the indemnitor." *Sequa Coatings Corp. v. N. Ind. Commuter Transp. Dist.*, 796 N.E.2d 1216, 1230 (Ind. Ct. App. 2003) (citation omitted). This is so "when the indemnitor has had an opportunity to participate in the claim but fails to honor the indemnity contract." *Bethlehem Steel Corp. v. Sercon Corp.*, 654 N.E.2d 1163, 1168 (Ind. Ct. App. 1995). An indemnitor acquiesces to a "settlement agreement by ignoring [the indemnitee's] requests for indemnification and assistance in defending against the litigation." *Sequa Coatings*, 796 N.E.2d at 1230.

That an indemnitor has denied liability on an indemnity contract for purposes of a settlement presupposes that it has received notice and an opportunity to defend against the claim. *See id.*; *Price v. Amoco Oil Co.*, 524 F. Supp. 364, 367 (S.D. Ind. 1981). A settlement is "not effected without notice [to the indemnitor] and an opportunity to assume the defense of the action." *Price*, 524 F. Supp. at 367.

> If the indemnitee, having notified the indemnitor, refuses to accept proffered assistance, or fails to tender the defense of the action, the indemnitee proceeds at his or her own risk with regard to any judgment or settlement [that] may ultimately ensue, and the indemnitee must establish that the indemnitor would have been liable or prove actual liability.

42 C.J.S. *Indemnity* § 29 (2022). This treatise, often cited by Indiana courts addressing indemnity issues, *see, e.g.*, *Indianapolis-Marion Cnty. Pub. Libr. v. Charlier Clark & Linard, PC*, 929 N.E.2d 838, 849 n.9 (Ind. Ct. App. 2010); *Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 758 (Ind. Ct. App. 2002), underscores the risk that an indemnitee like AXIS takes by not just demanding indemnity through its notice, but affording an opportunity to defend, including consideration of any settlement.

---

[2] In the context of a settlement, "a question as to whether the settlement was fair and reasonable remains." *Progressive*, 533 N.E.2d at 1287. This isn't the question today. Similarly not the question today is any principle of subrogation as AXIS confirms it is not proceeding in that manner, only under the PMA. *See, e.g., Ohio Casualty Group of Ins. Cos. v. Royal-Globe Ins. Cos.*, 413 N.E.2d 678, 679-80 (Ind. Ct. App. 1980) (discussing subrogation rights after a refusal to defend).

7

The law views this condition as an outgrowth of some measure of due process. In the context of settlements, notice and an opportunity to defend affords the indemnitor (American Specialty) the chance to protect its interests and those of its indemnitee (AXIS) before liability attaches or a settlement has been reached. It ensures that the indemnitor does not use the indemnity contract in bad faith to shift its own liability onto the indemnitor without the indemnitor engaging in a full-throated defense. This same notice permits the indemnitee to exercise its right to impose the burden of a defense on the party who ultimately must pay the settlement that might come, and to contest the facts on which that settlement might depend. *See* 42 C.J.S. *Indemnity* § 29 (2022). It would be fundamentally inequitable to stick the indemnitor with liability when the indemnitee has never given, much worse actively subverted, the opportunity to defend liability in the first place, particularly when that liability seemingly arises only because of the indemnitor's very conduct. If so, then let it defend its actions.

In each case offered by the parties where an indemnity right for a settlement payment was preserved, the indemnitee had not just requested indemnity but given the indemnitor the opportunity to defend. *See Sequa*, 796 N.E.2d at 1230 (indemnitor ignored "repeated requests for indemnification and assistance in defending against the litigation"); *Sink*, 458 N.E.2d at 293 (indemnitor received notice of "intention to settle and given the opportunity to take over the defense of the action"); *Price*, 524 F. Supp. at 366 (settlement effectuated only after notice "and an opportunity to assume the defense of the action"). The duties to defend and indemnify remain independent, and the first proves broader, *see Henthorne*, 764 N.E.2d at 757, but today's case concerns the right to notice and to an opportunity to defend before a party settles a claim voluntarily. Absent this manner of tender, or alternatively given an active refusal to accept a defense, an indemnitee proceeds at its own risk in settling a dispute.

Thus Indiana has adopted the rule that an indemnitor acquiesces to a "settlement agreement by ignoring [the indemnitee's] requests for indemnification and assistance in defending against the litigation" such that in its denial of liability on the contact the indemnitor "confers on the indemnitee the right to

exercise reasonable judgment in settling the case without further consultation with the indemnitor." *Sequa Coatings*, 796 N.E.2d at 1230; *accord Motorists Mut. Ins. Co. v. Johnson*, 218 N.E.2d 712, 717 (Ind. Ct. App. 1966) (indemnitor bound "provided it had notice of such litigation and an opportunity to control its proceedings"). Indeed, through the tender and then refusal to defend, an indemnitor would proceed at its peril and could be collaterally estopped from challenging whether it had any duty to indemnify should the indemnitee settle the claim. *See Roadsafe Holdings, Inc. v. Walsh Constr. Co.*, 164 N.E.3d 726, 732-33 (Ind. Ct. App. 2021). At the same time, the indemnitee would proceed at its peril in paying losses for which it was not liable. *See Progressive*, 533 N.E.2d at 1287.

So these scenarios present risk to both indemnitor and indemnitee—to the indemnitee if it never tenders its defense and then voluntarily settles a claim, or to the indemnitor if it denies the indemnitee's tender of the defense and the indemnitee then settles the claim (absent a declaratory judgment action or offering a defense under some reservation of rights). If any question might linger on this read of Indiana law, it stands in line with the great weight of authority. This rule of law isn't novel.

Courts traditionally have required a tender of defense; and when that tender has not been made, or when the party has not been informed of the settlement until afterwards or not participated in the negotiations and approved the agreement, the right to indemnity has been lost, absent a showing of actual liability. *See Atl. Richfield Co. v. Interstate Oil Transp. Co.*, 784 F.2d 106, 112 (2d Cir. 1986); *see, e.g.*, *Chevron Oronite Co., L.L.C. v. Jacobs Field Servs. N. Am., Inc.*, 951 F.3d 219, 226 (5th Cir. 2020) (the indemnitee "can avoid having to prove actual liability by giving the indemnitor, before a settlement is finalized, the choice" of approving the settlement or taking over the defense); *Seguros del Estado, S.A. v. Sci. Games, Inc.*, 262 F.3d 1164, 1178 (11th Cir. 2001) ("an indemnitee, after giving the indemnitor notice and an opportunity to defend, could settle a lawsuit and claim indemnity upon a showing that the decision to settle was reasonable") (citation omitted); *Jennings v. United States*, 374 F.2d 983, 986 (4th Cir. 1967) ("indemnitee's unilateral acts, albeit reasonable and undertaken in good faith, cannot bind the indemnitor; notice and an

9

opportunity to defend are the indispensable due process satisfying elements"); *Genger v. Genger*, 76 F. Supp.3d 488, 501 (S.D.N.Y. 2015) ("indemnitee cannot seek reimbursement from an indemnitor unless the indemnitee first notifies the indemnitor of a potentially covered claim and gives them an opportunity to defend against it"); *see also One Beacon Ins. v. M&M Pizza*, 8 A.3d 18, 23 (N.H. 2010); *Stamp Tech, Inc. (By & Through Blair) v. Lydall/Thermal Acoustical, Inc.*, 987 A.2d 292, 298 (Vt. 2009); *Star Elec. Contrs., Inc. v. Stone Bldg. Co.*, 863 So. 2d 1071, 1075 (Ala. 2003); *Pan Am. Petroleum Corp. v. Maddux Well Serv.*, 586 P.2d 1220, 1225 (Wyo. 1978); *Valloric v. Dravo Corp.*, 357 S.E.2d 207, 211 (W. Va. Ct. App. 1987); *cf. Hofheins v. Bajio Mountain W. LLC*, 414 P.3d 531, 540 (Utah Ct. App. 2017) (rejecting argument that "the indemnitee's failure to tender a defense would release the indemnitor from its indemnification obligation" but may alter burden of proof).

A contract might write a different obligation, but the court today has not been presented with argument that this one did.[3] Rather than tender the defense to American Specialty, AXIS prohibited the broker from defending the claim. On the very eve of the lawsuit by Mr. Tynes against the Buccaneers, AXIS told American Specialty that it "had no authority" over the Tynes claim and "should not be involved in the claims handling in any way," including "any discussions, selection of counsel or agreement on cost share." Five days later, AXIS emphasized that "American Specialty has no authority with respect to handling this claim." More to the point, rather than afford American Specialty an opportunity to defend, AXIS foreclosed American Specialty from defending. "American Specialty is not to have any role in the directing or managing of the defense of this claim," AXIS insisted.

---

[3] To the contrary, the PMA required notice. AXIS had a duty to notify American Specialty "[u]pon the assertion by any third party of any claim that may give rise to liability for which the [American Specialty] may have an obligation to indemnify [AXIS]" [ECF 235-1 § 27.6]. AXIS never argues that the remainder of this provision governing indemnification procedures alters this analysis under Indiana law. It never argues that this provision required something less than the tender of defense. It alludes generally to prejudice once or twice in briefing, but never in reference to the PMA or this provision. The court won't develop arguments for the parties. *See Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010).

AXIS said it reserved its rights to defense and indemnity, but never thereafter afforded the defense to American Specialty. Instead, for eighteen months—the entire pendency of the Tynes lawsuit until a settlement—AXIS maintained its position that "American Specialty is not to have any role in the directing or managing of the defense of this claim." Rather than accept a defense, AXIS foreclosed American Specialty's ability to defend. Moreover, AXIS continued to maintain a firm line that it had no liability whatsoever on the policy.

The only question is whether, at some point before or on the eve of mediation, AXIS pivoted. On this record, the answer is indisputably no. AXIS candidly acknowledges that it never communicated a change to that directive. It might prove difficult to alter course from an eighteen-month-long clear directive, and the pre-mediation letter let that directive stand. Once more AXIS reserved its rights, as it said it did before, but it never tendered the defense to American Specialty, never asked American Specialty to attend the mediation to defend AXIS, and never gave American Specialty the opportunity to defend or approve the settlement.

Indeed, even in the reservation of its rights this time, AXIS did so only should "a court or jury" reach a conclusion about liability, not if AXIS settled. After all, AXIS underscored it had no coverage obligation under the policy as issued. To be sure, the letter invited American Specialty to the mediation, but only because it "may be in the mutual interest of American Specialty and Marsh USA" (the other broker) to participate in a "market solution to resolve this claim." This letter was about having pocketbooks at the table, not ensuring that American Specialty attended to defend AXIS or to defend the claim. No reasonable jury could see it otherwise.

Nor thereafter did American Specialty deny liability on the indemnity contract—hard to do when the company has been expressly told it cannot defend the claim and when AXIS concedes that it subverted American Specialty's ability to do so. *See Sequa Coatings*, 796 N.E.2d at 1230. Again, in oral argument, AXIS concedes that at no time did American Specialty reject the indemnity obligation. *See id.*

11

(only an "indemnitor who denies liability on an indemnity contract confers on the indemnitee the right to exercise reasonable judgment in settling the case"). A communication from American Specialty (May 14, 2015) that responded to the "stay out of it" letter from AXIS never denied liability but instead asked AXIS to reform the policy. American Specialty's letters to Marsh USA likewise contain no denial of liability on the indemnity contract to AXIS, but instead asserted its position as between the brokers.

In short, AXIS identifies no evidence in which it gave American Specialty the opportunity to defend (or asked American Specialty to approve a settlement before it concluded), or in which American Specialty thereafter denied its liability under the indemnity contract. *See id.*; *Sink*, 458 N.E.2d at 293. Both factual gaps mean that AXIS proceeded at its own risk to settle voluntarily. To that point, AXIS's representative testified that its participation in the "market solution" of mediation was "voluntary" because it was the "prudent course to take."

That leaves one question—whether AXIS has shown its actual liability to the Buccaneers (or to Mr. Tynes). AXIS offers no evidence on this record that it would have been actually liable; to the contrary, the company maintains its position that its insurance policy foreclosed coverage, and it only alludes to potential liability because of anything that American Specialty did by way of breaching the PMA. Throughout briefing, AXIS frames its liability as "potential." Given what the policy said about coverage, AXIS cannot claim that its liability was "actual." *See Citizens Prop. Ins. Corp. v. Manor House, LLC*, 313 So.3d 579, 583 (Fla. 2021) ("parties must rely on what they actually have pursuant to the express terms and conditions of the insurance policy").[4] Everyone seems to understand that the policy never scheduled employer's liability coverage, a position that AXIS could have argued in defense against the Buccaneers, or frankly one American Specialty could have argued if given the chance at a defense. It was not inevitable that AXIS would actually lose. *See Progressive*, 533 N.E.2d at 1287 ("indemnity does not cover losses for which the indemnitee is not liable").

---

[4] Florida law governed the Buccaneers' insurance policy with AXIS [ECF 235-14 at 2].

The court has considered whether AXIS intended to pursue another contract action here—outside the indemnity provision—but the insurer assures the court that its claim remains solely one of indemnification, using the contract breaches only as a mechanism to trigger the indemnity clause as written. Without evidence that AXIS conferred an opportunity to defend to American Specialty, and indeed counter evidence that AXIS explicitly told American Specialty to stay out of the defense, and without evidence that American Specialty denied liability on the indemnity contract before AXIS voluntarily settled with the Buccaneers, no reasonable jury could find for AXIS on its indemnification claim. The court thus grants summary judgment for American Specialty.

B.   *Motions to Seal.*

AXIS and American Specialty filed motions to seal certain documents in this litigation. Based on the discussion at oral argument, these parties defer largely to the Buccaneers on what should still be preserved confidentially. The Buccaneers filed its own motions.

"Because there is a strong presumption toward public disclosure of court files and documents, courts resolving such motions have placed the burden on the party seeking confidentiality to show good cause for keeping the documents from public view." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 566 (7th Cir. 2018). "[D]ispositive documents in any litigation enter the public record notwithstanding any earlier agreement." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002). This is "why very few categories of documents are kept confidential once their bearing on the merits of a suit has been revealed." *Id.*

The Buccaneers requested that three documents be sealed. First, the Buccaneers and American Specialty request that the confidential settlement agreement between AXIS and the Buccaneers [ECF 239] remain sealed. The parties intended that agreement to remain confidential and the court had no need to rely on the agreement in its ruling, so the court grants this request. The Buccaneers and AXIS also request that the unredacted expert report [ECF 278] and deposition [ECF 279] of American Specialty's

proposed expert (John Pappas) remain sealed. AXIS filed redacted versions of these documents as well, and the Buccaneers have no objection to the redacted versions remaining unsealed. The redactions appear to shield the settlement amount only, so the court grants the request to seal the unredacted filings in favor of the unsealed redacted filings.

American Specialty asks the court to seal its summary judgment brief and statement of material facts under seal because they reference settlement terms. The court denies this request because the court relied on these documents in its ruling. American Specialty asks to seal other exhibits as an accommodation to AXIS. The court grants this request only as to ECF 240 because it contains confidential settlement information and was not relied on by the court. The other exhibits under this motion either don't reference confidential information or were relied on by the court.

American Specialty asks the court to keep the redacted portions of its response to AXIS's partial motion for summary judgment under seal. This document does not need to be sealed because the confidential information has been redacted, so the court denies this request. Additionally, the court will keep the documents in ECF 276 under seal because they contain settlement amounts and were not relied on by the court.

AXIS asks the court to seal an exhibit [ECF 229-26] containing confidential settlement numbers. AXIS filed an unsealed redacted version of the exhibit. The redacted portions appear to be settlement amounts only, so the court grants the request to keep the unredacted version of the exhibit sealed. AXIS also moved to keep its response to American Specialty's statement of undisputed material facts and statement of additional material facts [ECF 265] under seal due to confidential settlement terms included therein. AXIS filed a redacted version as well, which redacts only settlement amounts and one quote from the settlement agreement. The court grants the request to seal the unredacted version and unseals the redacted version. AXIS requests to keep its reply to American Specialty's response to AXIS's statement of material facts under seal [ECF 270], having filed a redacted version as well. The redactions concern

direct quotes from the settlement agreement, so the court grants the request to keep the unredacted version under seal. The court denies the motions in all other respects.

## CONCLUSION

Accordingly, the court GRANTS American Specialty's summary judgment motion [ECF 231], DENIES AXIS's partial summary judgment motion to the extent coextensive with American Specialty's motion and DENIES AS MOOT the remainder [ECF 228]. The court DENIES AS MOOT the motions to exclude expert testimony or disqualify [ECF 275, 280, 282, 284]. The court GRANTS certain motions to seal [ECF 244, 267, 273, and 286]. The court GRANTS IN PART one of American Specialty's motions to seal [ECF 232] and DENIES the other [ECF 261]. The court DIRECTS the clerk to seal only the following documents: ECF 229-26, 239, 240, 265, 270, 276, 278, and 279; and DIRECTS the clerk to unseal the following documents: ECF 233, 234, 236, 237, 238, 241, 262, and 266. This order terminates the case.

SO ORDERED.

March 17, 2023
*s/ Damon R. Leichty*
Judge, United States District Court